# Exhibit A

**ASSIGNATION DEVANT LE TRIBUNAL JUDICIAIRE**

**DE PARIS**

L'AN DEUX MILLE VINGT CINQ

LE

A LA DEMANDE DE

**Madame Susan OSTER**
Née le 24 mars 1964 à Philadelphie (Pennsylvanie), de nationalité américaine, exerçant la profession de créatrice de bijoux, demeurant 1880 Century Park East, Suite 900, Los Angeles, CA, 90067, Etats-Unis d'Amérique, élisant domicile au cabinet SVL AVOCAT – représenté par Me Sophie VIARIS de LESEGNO - 17 boulevard Raspail 75007 Paris

Ayant pour avocat :        **SVL AVOCAT**
                           **Représentée par Maître Sophie VIARIS de LESEGNO**
                           **Avocat au barreau de Paris**
                           17, boulevard Raspail - 75007 Paris
                           Tél. : 01 53 74 10 80 – Fax : 01 53 74 10 81
                           Toque G 605

J'ai

Commissaire de Justice

Donné assignation à

1. **RAINBOW K JEWELRY**
   SAS au capital de 17.000 euros, dont le siège se situe 5 rue de Castiglione 75001 Paris, immatriculée au RCS de Paris sous le numéro B 847 936 671, prise en la personne de son représentant légal ;

2. **Madame Kelly BENHAMOU - SOUEID**
   Née le 19 juillet 1990 à Antibes, de nationalité française, demeurant 28 rue Sedaine 75011 Paris

3. **Madame Kélia TOLEDANO – BERDAH**
   Née le 6 septembre 1990 à Paris, de nationalité française, demeurant 17, rue Cernuschi 75017 Paris

**D'AVOIR À COMPARAÎTRE :**

**LE 10 juillet 2025 A 10 heures 05**

1

**Par-devant le Tribunal judiciaire de Paris, siégeant en la salle ordinaire de ses audiences au Palais
de justice de Paris, 3ème Chambre – 2ème Section, sis Parvis du Tribunal de Paris, 75017 PARIS**

**ET L'INFORME :**

Qu'un procès leur est intenté pour les raisons exposées ci-après

### TRÈS IMPORTANT

Que dans un délai de QUINZE JOURS, à compter de la date du présent acte, conformément aux
articles 54, 56, 752 et 763 du Code de procédure civile, elles sont tenues de constituer avocat pour
être représentées par-devant ce tribunal.

Toutefois, si l'assignation leur est délivrée dans un délai inférieur ou égal à quinze jours avant la date
de l'audience, elles peuvent constituer avocat jusqu'à l'audience.

Que l'État, les départements, les régions, les communes et les établissements publics peuvent se
faire représenter ou assister par un fonctionnaire ou un agent de leur administration.

Qu'à défaut, elles s'exposent à ce qu'un jugement soit rendu contre eux sur les seuls éléments
fournis par leur adversaire.

### rticles de la loi n° 71-1130 du

**après :**

### Article 5

*Les avocats exercent leur ministère et peuvent plaider sans limitation territoriale devant toutes les
juridictions et organismes juridictionnels ou disciplinaires, sous les réserves prévues à l'article 4.
Ils peuvent postuler devant l'ensemble des tribunaux judiciaires du ressort de cour d'appel dans lequel
ils ont établi leur résidence professionnelle et devant ladite cour d'appel.*

*Par dérogation au deuxième alinéa, les avocats ne peuvent postuler devant un autre tribunal que celui
auprès duquel est établie leur résidence professionnelle ni dans le cadre des procédures de saisie
immobilière, de partage et de licitation, ni au titre de l'aide juridictionnelle, ni dans des instances dans
lesquelles ils ne seraient pas maîtres de l'affaire chargés également d'assurer la plaidoirie.*

### Article 5-1

*Par dérogation au deuxième alinéa de l'article 5, les avocats inscrits au barreau de l'un des tribunaux
de Paris, Bobigny, Créteil et Nanterre peuvent postuler auprès de chacune de ces juridictions
Ils peuvent postuler auprès de la cour d'appel de Paris quand ils ont postulé devant l'un des tribunaux
judiciaires de Paris, Bobigny et Créteil, et auprès de la cour d'appel de Versailles quand ils ont postulé
devant le tribunal judiciaire de Nanterre.*

*La dérogation prévue au dernier alinéa du même article 5 leur est applicable*

2

rocédure civile suivantes :

### Article 640

*Lorsqu'un acte ou une formalité doit être accompli avant l'expiration d'un délai, celui-ci a pour origine la date de l'acte, de l'événement, de la décision ou de la notification qui le fait courir.*

### Article 641

*Lorsqu'un délai est exprimé en jours, celui de l'acte, de l'événement, de la décision ou de la notification qui le fait courir ne compte pas.*

*Lorsqu'un délai est exprimé en mois ou en années, ce délai expire le jour du dernier mois ou de la dernière année qui porte le même quantième que le jour de l'acte, de l'événement, de la décision ou de la notification qui fait courir le délai. À défaut d'un quantième identique, le délai expire le dernier jour du mois.*

*Lorsqu'un délai est exprimé en mois et en jours, les mois sont d'abord décomptés, puis les jours.*

### Article 642

*Tout délai expire le dernier jour à vingt-quatre heures.*

*Le délai qui expirerait normalement un samedi, un dimanche ou un jour férié ou chômé est prorogé jusqu'au premier jour ouvrable suivant.*

### Article 642-1

*Les dispositions des articles 640 à 642 sont également applicables aux délais dans lesquels les inscriptions et autres formalités de publicité doivent être opérées.*

### Article 643

*Lorsque la demande est portée devant une juridiction qui a son siège en France métropolitaine, les délais de comparution, d'appel, d'opposition, de tierce opposition dans l'hypothèse prévue à l'article 586 alinéa 3, de recours en révision et de pourvoi en cassation sont augmentés de :*

*1. Un mois pour les personnes qui demeurent en Guadeloupe, en Guyane, à la Martinique, à La Réunion, à Mayotte, à Saint-Barthélemy, à Saint-Martin, à Saint-Pierre-et-Miquelon, en Polynésie française, dans les îles Wallis et Futuna, en Nouvelle-Calédonie et dans les Terres australes et antarctiques françaises ;*

*2. Deux mois pour celles qui demeurent à l'étranger.*

in        aux défendeu     en a                    7        Code de  rocédu

Que, la demanderesse ne consent pas à ce que la procédure se déroule sans audience en application de l'article L. 212-5-1 du Code de l'organisation judiciaire.

Que les pièces sur lesquelles la demande est fondée sont visées et jointes en fin d'acte selon bordereau.

3

**OBJET DE LA DEMANDE**

**EXPOSE DES FAITS**

- **Madame Susan OSTER**

1. Madame Susan OSTER est une créatrice de bijoux américaine réalisant sous la marque FERAL des pièces de Haute Joaillerie.

   Madame Susan OSTER a développé avec succès son activité depuis l'année 2016

   Celle-ci est une créatrice engagée dans le développement durable, sublimant, dans une démarche éco-responsable, des matériaux nobles et/ou précieux à travers des créations inspirées de la nature et du monde sauvage nord-américain.

   Madame OSTER adopte une éthique stricte et refuse notamment de travailler avec la galvanoplastie[1] ou des produits nuisant à l'environnement.

   L'originalité de ses créations a été saluée par la presse, celle-ci ayant été également retenue au sein de l'ouvrage *100 Women in Jewelery*, publié en 2022.

   **(Cf. Pièce 1.1 à 1.4)**

2. Les créations de Madame OSTER reflètent un esprit glamour, sauvage, indomptable et sans artifice.

   Elles sont commercialisées aux Etats-Unis et en France auprès de revendeurs premium

   Madame Susan OSTER présente également ses créations lors de salons professionnels de Haute Joaillerie aux Etats-Unis, lesquels accueillent des publics et exposants de toutes nationalités.

   **(Cf. Pièces 1.1 à 1.3)**

   **La collection « Spike »**

3. Parmi les collections créées par Madame OSTER, la collection « Spike » est celle qui est la plus emblématique.

   Cette collection réinterprète les extrémités des bois et cornes d'animaux sauvages.

   Celle-ci a été commercialisée à compter de l'année 2017 et a fait l'objet de deux enregistrements auprès du Copyright Office américain.

   **(Cf. pièce 2.1 à 2.3)**

---

1. Procédé de placage par électrolyse utilisé en orfèvrerie

4

4. Cette collection est déclinée autour de bagues réalisées dans différentes variations, de pendentifs et boucles d'oreilles, fabriqués à partir de pierres et métaux précieux, de cristal, d'onyx et/ou de véritables bois d'élan.

Cette collection a été saluée par la presse aux États Unis et a fait l'objet d'une publication en France au sein du magazine de Mode L'Officiel en octobre 2018.

**(Cf. Pièces 1.2 et 2.3)**

BLACK SPIKE

BLING SPIKE RING          CRYSTAL SPIKE RING          FACETED CRYSTAL TIPPED SPIKE

GOLD CRYSTAL SPIKE          GOLD SPIKE RING

POLISHED BLING SPIKE

**La société RAINBOW K JEWELRY**

5. RAINBOW K JEWELRY est une société française de création et de vente d'articles de joaillerie fondée en 2019.

   Cette société française développe une activité commerciale internationale en particulier aux Etats-Unis.

   Cette société française dispose :
   - D'un siège social situé au 17 rue Cernuschi 75017 selon les mentions légales portées sur son site internet, et au 5 rue de Castiglione 75001 Paris selon son extrait, K Bis ;

     D'un showroom situé 26 avenue Montaigne, 75008 Paris, accessible uniquement sur rendez-vous préalable ;

     D'une boutique en ligne accessible à l'adresse                          ;

     D'un réseau de distributeurs à l'international (France, Etats-Unis, Monaco, Dubaï, Qatar et Liban).

   **(Cf. Pièces 3.1 à 3.3)**

6. L'entreprise a été fondée par Mesdames Kélia TOLEDANO-BERDAH et Kelly BENHAMOU-SOUIED.

   Madame Kelia TOLEDANO-BERDAH a assuré la présidence de l'entreprise du 1er février 2019 au 1er juillet 2019.

   **(Cf. Pièces 3.1 et 3.2)**

   Madame Kelia TOLEDANO-BERDAH est décrite sur le site internet de l'entreprise comme la créatrice des collections et la directrice artistique de la marque RAINBOW K JEWELRY.

   Madame Kelly BENHAMOU-SOUIED est l'actuelle présidente de l'entreprise

   Se présentant comme gemmologue, elle est également décrite comme co-créatrice des collections de la marque RAINBOW K JEWELRY.

   **(Cf. Pièces 3.3)**

   **Exploitations l          – la collection « HORN » de     NBOW K JEWELRY**

7. Dans le courant de l'année 2023, Madame Susan OSTER a eu la surprise de découvrir lors de salons professionnels et dans des publications sur les réseaux sociaux, la présentation et la commercialisation par la marque française RAINBOW K JEWELRY d'une collection intitulée « Horn » composée d'articles de joaillerie déclinant des bagues, bracelets et boucles d'oreilles.

   **(Cf. Pièce 4.2)**

Or, cette collection reproduit les caractéristiques essentielles et imite les articles de la collection « Spike » de Madame OSTER.

**Collection Horn**

*Ci-dess      gues Horn femme*

*Ci-dessus bagues H      .ignes Diamants noirs homme*

*Ci-dessus bracelets Horn — femmes et hommes*

7

*Ci-dessus boucles d'oreilles Horn*

*Ci-dessus boucles d'oreilles Horn – femmes et hommes*

**Collection Horn**

**(Cf. Pièce 4.2)**

Les ressemblances présentées entre la collection « Horn » de RAINBOW K JEWELRY avec la collection « Spike » de la marque FERAL de Susan OSTER sont telles qu'elles ne peuvent relever de la coïncidence.

Confrontée à des imitations aussi grossières et au vu de leur promotion massive par RAINBOW K JEWELRY, Madame Susan OSTER a transmis ce dossier à ses conseils.

**(Cf. Pièces 4.1 à 4.4)**

**Les tentatives infructue      de règlement amiable**

8. Par courrier en date du 19 mai 2023, le cabinet JRSND, conseils américains de Madame Susan OSTER, rappelait à la société RAINBOW K JEWELRY, l'antériorité des droits de Madame OSTER et l'enregistrement auprès du Copyright Office américain du bijou « Bling Spike Ring » de la collection « Spike ».

La société RAINBOW K JEWELRY était ainsi mise en demeure de :

Cesser toute commercialisation et offre à la vente des articles de la collection « Horn » ;
Confirmer l'engagement de cesser toute présentation, promotion, commercialisation ou vente de tout article contrefaisant la collection « Spike », en particulier lors de salons professionnels ;

Communiquer le montant des revenus bruts générés par la vente des articles litigieux

Devant l'absence de réponse de la société RAINBOW K JEWELRY, ces demandes étaient réitérées par courriel en date du 21 juin 2023.

Aucune réponse n'a été apportée à ce courrier de relance

**(Cf. Pièces 5.1 et 5.2)**

9. Malgré ces mises en demeure, Madame Susan OSTER constatait la poursuite des agissements litigieux de la société RAINBOW K JEWELRY et la très large publicité faite par ses créatrices autour de la collection « Horn », qui était présentée comme une collection de bijoux originaux.

Devant cette démarche d'appropriation illégitime et d'éviction, Madame Susan OSTER sollicitait son cabinet français de conseils en propriété industrielle afin de réitérer les mises en demeure précédemment adressées.

Ainsi par courrier recommandé en date du 3 octobre 2024, le cabinet BRANDSTORMING mettait en demeure la société RAINBOW K JEWELRY de :

Cesser toute distribution et commercialisation de quelque nature que ce soit de l'ensemble des modèles de la collection « Horn » ;

Cesser toute promotion et diffusion de quelque nature que ce soit de l'ensemble des modèles de la collection « Horn » ;

Reconnaître formellement les droits antérieurs de Madame Susan OSTER sur ses créations et en particulier sur la collection « Spike » ;

S'engager à cesser toute reproduction, représentation et diffusion de tout article identique ou similaire aux créations antérieures de Susan OSTER, et/ou reprenant l'une ou l'autre de leur(s) caractéristique(s) essentielle(s).

Si ce courrier de mise en demeure a bien été réceptionné par la société RAINBOW K JEWELRY tant à son siège qu'à son showroom, puis confirmé par la suite par courrier électronique envoyé à l'adresse contact@rainbowkjewelry.com le 21 octobre 2024, cette dernière n'a pas daigné y apporter la moindre réponse.

**(Cf. Pièces 5.3 et 5.4)**

10. C'est dans ce contexte que Madame Susan OSTER a été autorisée par ordonnances en date du 27 mars 2025 à opérer différentes mesures de saisie descriptive des articles de la collection HORN.

C'est ainsi que le commissaire de justice, Maître Éric LE MAREC s'est présenté au showroom de la société RAINBOW K JEWELRY le 10 avril 2025 afin d'effectuer les opérations de saisie.

**(Cf. Pièces 6.1 et 6.2)**

Lors de ces opérations, le Commissaire de justice a pu confirmer la présence dans les lieux de cinq des six articles litigieux (bague ring Horn Full Diamond, la Bague Ring Horn Hoop Diamonds, la bague Horn Gold, la bague Horn Black Diamond ainsi que le bracelet Bangle Horn Hoop Diamonds).

Interrogée par téléphone lors des opérations de constat, Madame Kélia TOLEDANO-BERDAH confirmait être personnellement la créatrice des modèles en cause, et avoir connaissance des revendications de Madame Susan OSTER.

Elle précisait que les articles litigieux avaient été conçus en début d'année 2022 et étaient réalisés par une usine en Chine.

Concernant les mesures d'information comptable ordonnées, Madame TOLEDANO n'était pas coopérative et se contentait d'indiquer que les articles n'auraient pas rencontré « un franc succès ».

Il était demandé par courriel la transmission des éléments comptables relatifs aux articles en cause, en particulier concernant le chiffre d'affaires généré, et l'état des stocks des articles visés par ordonnance.

L'époux de Madame TOLEDANO apportait une réponse dilatoire pour le compte de son épouse ceux-ci privilégiant leurs congés...

Au jour de la rédaction des présentes les informations sollicitées et ordonnées, n'ont pas été remises.

**(Cf. Pièces 6.1 et 6.2)**

11. Au vu de la mauvaise foi et de l'arrogance persistante de la société RAINBOW K JEWELRY et de ses dirigeantes, Madame Susan OSTER a été contrainte de saisir le Tribunal de céans afin que ses prérogatives de droit patrimonial et moral soient respectées.

**DISCUSSION**

**I.**

    **A.**

        **1.  EN DROIT**

12. L'article L. 111-1 du code de la propriété intellectuelle dispose que l'auteur d'une œuvre de l'esprit jouit sur cette œuvre, du seul fait de sa création, d'un droit de propriété incorporelle exclusif et opposable à tous. Ce droit comporte des attributs d'ordre intellectuel et moral ainsi que des attributs d'ordre patrimonial, qui sont déterminés par les livres Ier et III du présent code.

En France, la protection d'une œuvre de l'esprit est acquise à son auteur sans formalité et du seul fait de la création d'une forme originale, en ce sens qu'elle porte l'empreinte de la personnalité de son auteur et n'est pas la banale reprise d'un fonds commun non-appropriable.

En application de la directive 2001/29 sur l'harmonisation de certains aspects du droit d'auteur et des droits voisins dans la société de l'information, une œuvre implique un objet original, c'est-à-dire une création intellectuelle propre à son auteur, qui en reflète la personnalité en manifestant ses choix libres et créatifs ; et cet objet doit être identifiable avec suffisamment de précision et d'objectivité, ce qui exclut une identification reposant essentiellement sur les sensations de la personne qui reçoit l'objet (CJUE, 12 septembre 2019, Cofemel, C-683/17, points 29 à 35).

L'originalité d'une œuvre résulte notamment de partis pris esthétiques et de choix arbitraires de son auteur qui caractérisent un effort créatif portant l'empreinte de sa personnalité, et n'est pas la banale reprise d'un fonds commun non appropriable.

        **2.  EN L'ESPÈCE**

13. La qualité d'auteur de Madame Susan OSTER du modèle de bague « Spike » est établie notamment par le dépôt aux Etats-Unis de cette création auprès du Copyright Office américain.

En effet, la bague « Spike » est une œuvre originaire des Etats-Unis, pays de sa première divulgation en 2017, et dont sa créatrice est ressortissante.

La bague « Bling Spike » est ainsi protégée selon les dispositions du droit des Etats-Unis d'Amérique par son enregistrement sous le n° VA 0002202552 auprès du Copyright Office en date du 10 février 2020.

Madame Susan OSTER exerce son activité sous l'enseigne et la marque FERAL. La bague « Spike » a été ainsi divulguée sous son nom et la marque FERAL aux États-Unis et en France, notamment, via une publication dans le magazine l'Officiel au mois d'octobre 2018.

www.feraljewelry.com

La paternité de celle-ci sur la collection « Spike » est ainsi établie.

**(Cf. Pièces 1.1 à 1.4 et 2.1)**

14. La protection de cette bague par le droit d'auteur est également conforme aux exigences du droit français et de l'Union Européenne en ce qu'il s'agit d'une œuvre originale portant l'empreinte de la personnalité de sa créatrice, Madame Susan OSTER.

En effet, les bagues « Bling Spike » et « Gold Spike », sont représentées comme suit :

Si la collection « Spike » comporte des variations, les caractéristiques essentielles et communes de chaque modèle sont les suivantes :

La base des modèles (tige) est en forme de U avec des côtés plats parallèles.

Les deux extrémités de la tige sont arrondies et percées de chaque côté, le premier trou étant plus large que le second.

A l'intérieur de ces trous est fixé un axe traversant, légèrement concave en forme conique, présentant une légère courbure vers le bas d'une extrémité à l'autre ; l'extrémité la plus large ayant le plus grand diamètre et se rétrécissant progressivement jusqu'au plus petit diamètre au niveau de la pointe ; les extrémités dépassent de chaque côté de la tige.

L'axe traversant présente une extrémité large et plate d'un côté et une extrémité fine et pointue de l'autre. La partie la plus plate et la plus large de l'élément conique est pavée d'une rangée de diamants.

11

Les modèles « Spike » comptent différents degrés de pavage de diamants en fonction des variations, allant de simples lignes droites de diamant sur la tige à un pavage de diamants recouvrant la totalité de l'élément conique pour le modèle « Bling Spike ».

**(Cf. Pièces 2 et 4)**

15. L'inspiration de Madame Susan OSTER pour la création de ces modèles est la volonté de sublimer les pointes de bois d'élan, en hommage au monde animal sauvage nord-américain.

Ces bijoux évoquent ainsi la liberté. La créatrice a souhaité magnifier les bois de cervidés : armes de défense et de séduction de cet animal sauvage.

La tige large et en forme de U combinée avec l'élément ornemental conique évoque également la puissance et la fierté, et incarne l'élégance rebelle propre aux créations de Madame OSTER.

Madame Susan OSTER a ainsi créé une collection de bijoux sophistiquée, qui incarne la liberté et l'indépendance, la proximité avec la nature et le monde animal, et qui adopte la symbolique du 'pique' des bois de cervidés comme arme de séduction et de puissance.

Monsieur David Schwartz, professionnel de la haute joaillerie et expert de la joaillerie de luxe, atteste de l'originalité de ces créations notamment en ces termes.

*« 13. La combinaison d'un élément « Spike » conique courbé vers le bas présentant un diamètre progressif d'une extrémité à l'autre, perçant la tige en forme de « U » avec ou sans pavage de diamants et/ou la présence d'accents métalliques, en fait, selon moi, une œuvre de conception originale. J'estime que cette œuvre justifie l'enregistrement de droits d'auteur aux Etats-Unis portant le n° VA-2-202-552 accordé le 10 février 2020 à Susan Oster. »*

En conséquence, les modèles de la collection « Spike », notamment dans leurs déclinaisons « Bling Spike » et « Gold Spike », sont éligibles à la protection par le droit d'auteur, ce que les défenderesses ne sauraient sérieusement contester dès lors que les produits argués de contrefaçon en sont la copie quasi servile.

**(Pièces 1.1 à 1.3 et 4.4)**

**B.**

**1. EN DROIT**

16. Selon les dispositions de l'article L. 122-4 du Code de la Propriété intellectuelle :

*« Toute représentation ou reproduction intégrale ou partielle faite sans le consentement de l'auteur ou de ses ayant droit ou ayant cause est illicite.*
*Il en est de même pour la traduction, l'adaptation ou la transformation, l'arrangement ou la reproduction par un art ou un procédé quelconque ».*

Les article L.335-2 et L.335-3 précisent à ce sujet

*« Toute édition d'écrits, de composition musicale, de dessin, de peinture ou de toute autre production, imprimée ou gravée en entier ou en partie, au mépris des lois et règlements relatifs à la propriété des auteurs, est une contrefaçon et toute contrefaçon est un délit.*

*La contrefaçon en France d'ouvrages publiés en France ou à l'étranger est punie de trois ans d'emprisonnement et de 300 000 euros d'amende.*

*Seront punis des mêmes peines le débit, l'exportation, l'importation, le transbordement ou la détention aux fins précitées des ouvrages contrefaisants.*

*Lorsque les délits prévus par le présent article ont été commis en bande organisée, les peines sont portées à sept ans d'emprisonnement et à 750 000 euros d'amende. »*

*« Est également un délit de contrefaçon toute reproduction, représentation ou diffusion, par quelque moyen que ce soit, d'une œuvre de l'esprit en violation des droits de l'auteur, tels qu'ils sont définis et réglementés par la loi. »*

## 2. EN L'ESPECE

17. La société RAINBOW K JEWELRY propose à la vente via son site internet et à son showroom les produits suivants dans une collection intitulée « Horn » :

**Rainbow K** - Bague Horn Pavé

Matière : Or 14K (variations possibles en or blanc, or jaune ou or rose)

Pierres : Diamants blancs 0,50 cts

**Pièces 4.1 et 4.2**

**Rainbow K** - Bague Horn Lignes Diamants

Matière : Or 14K (variations possibles en or blanc, or jaune ou or rose)

Pierres : Diamants blancs 0,25 cts

**Pièces 4.1 et 4.2**

**Rainbow K** - Bague Horn Or

Matière : Or 14K (variations possibles en or blanc, or jaune ou or rose)

**Pièces 4.1 et 4.2**

**Rainbow K -** Bague Horn Or Lignes Diamants noir

Matière : Or 14K (variations possibles en or blanc, or jaune ou or rose)

Pierres : Diamants noirs 0,25 cts

**Pièces 4.1 et 4.2**

**Rainbow K –** Bracelet Horn – Lignes diamants (deux modèles - Femme et Homme)

Matière : Or 14K (variations possibles en or, blanc, or jaune ou or rose)

Pierres : Diamants blancs : 0,80 cts

13

| | Taille : 14 à 22 cm (9 tailles) |
| | **Pièces 4.1 et 4.2** |
| | **Rainbow K – Bracelet Horn – pavé** |
| | Matière : Or 14K (variations possibles en or, blanc, or jaune ou or rose) |
| | Pierres : Diamants blancs : 2,69 cts |
| | Taille : 14 à 17 cm (4 tailles) |
| | **Pièces 4.1 et 4.2** |

18. Les caractéristiques essentielles des modèles de la collection « Spike » sont ainsi servilement reprises par les bagues et bracelets de la collection « Horn », il s'agit en particulier :

De la forme conique incurvée vers le bas de l'élément principal ;
Du diamètre progressif de l'élément principal d'une extrémité à l'autre ;
Du perçage des parois parallèles de la tige par l'élément principal, lequel dépasse des deux côtés ;
Du pavage de diamants de l'extrémité la plus large de l'élément principal ;
De la tige de la bague en forme de U ;
Des parois plates et parallèles de la tige avec des extrémités arrondies.

**(Cf. Pièces 2 et 4)**

19. La comparaison entre les articles en cause laisse apparaître une reproduction quasi-servile.

Les créations en cause associent les mêmes matériaux (or et diamants) et proposent également un élément principal conique pavé intégralement de diamants.

14

Bling Spike ring Feral                          Bague Horn Pavé Rainbow K

Spike Ring

Bagues Horn Or et Lignes Diamants Rainbow K

**(Cf. Pièces 2.1, 2.3 et 4.1 à 4.4)**

La reprise de l'ensemble ces caractéristiques essentielles matérialise des actes de contrefaçon manifestes, les légères différences présentées par les bagues et bracelets de la collection « Horn » étant de détail et ne permettant pas au public examinant les articles des deux collections de les différencier.

Le public amené à examiner la collection « Horn » est ainsi susceptible de penser qu'il s'agit d'articles de même gamme que la collection « Spike ».

Les caractéristiques essentielles de la collection « Spike » se retrouvent ainsi reproduites à l'identique au sein des articles suivants proposés par la société RAINBOW K JEWELRY :

20. Ces mêmes caractéristiques essentielles sont également présentes dans les bracelets « Horn », laissant apparaître une adaptation non autorisée des bagues « Spike » sous forme de bracelets.

**Rainbow K – Bracelet Horn – Lignes diamants (deux modèles distincts, Femme et Homme)**

Matière : Or 14K (variations possibles en or, blanc, or jaune ou or rose)

Pierres : Diamants blancs : 0,80 cts

**Pièces 4.1 et 4.2**

**Rainbow K –** Bracelet Horn – pavé

Matière : Or 14K (variations possibles en or, blanc, or jaune ou or rose)

Pierres : Diamants blancs : 2,69 cts

15

**Pièces 4.1 et 4.2**

21. A ce sujet, Monsieur David SCHWARTZ, expert en haute joaillerie, considère dans un rapport circonstancié que :

> « 18. Après avoir soigneusement inspecté et analysé en personne la bague « Spike bling Ring » de Feral et la bague « Horn » de Rainbow K, et après avoir effectué mes propres recherches concernant ces bijoux, marques et collections, et entités, j'estime que les similitudes entre les deux bagues sont trop frappantes pour qu'il s'agisse d'une coïncidence. (...)

> 20. La collection « Horn » et la bague « Horn » de Rainbow K ne sont pas suffisamment différentes de la collection « Spike » et de la bague « Spike Ring » de Feral pour être considérées comme une conception artistique, ni permettre la reconnaissance d'une paternité nouvelle et originale. L'ajout de conceptions mineurs (accents) ne justifie pas une revendication de paternité originale ni ne saurait affecter la validité de toute paternité originale. »

**(Cf. Pièce 4.4)**

Ces agissements caractérisent des actes de contrefaçon par reproduction concernant les bagues litigieuses et par adaptation concernant les bracelets et portent ainsi atteinte aux droits patrimoniaux de Madame Susan OSTER.

## C. SUR L'ATTEINTE AU DROIT MORAL

### 1. EN DROIT

22. En vertu de l'article L. 121-1 du Code de la Propriété intellectuelle, l'auteur jouit du droit au respect de son nom, de sa qualité et de son œuvre.

Le respect de la paternité de l'auteur implique que toute reproduction ou exploitation de son œuvre doit mentionner son nom. Ainsi, l'usurpation de la qualité d'auteur d'une création porte atteinte au droit moral de l'auteur.

### 2. EN L'ESPECE

23. Il est manifeste que la société RAINBOW K JEWELRY et ses dirigeantes se présentent comme les créatrices des produits litigieux dans une entreprise manifeste de détournement et d'usurpation.

**(Cf. Pièces 3.3 et 3.4)**

Il est établi que les créations de Madame OSTER jouissent d'une antériorité avérée, celles-ci ayant été commercialisées à compter de l'année 2017 (soit avant la constitution de la société RAINBOW K JEWELRY).

Madame OSTER était également présente lors de salons professionnels aux États-Unis, territoire sur lequel la société RAINBOW K JEWELRY et ses créatrices ont largement développé leur activité commerciale.

16

Cette entreprise d'éviction et la large communication réalisée par les défenderesses a pu ainsi tromper le public et la presse la plus notoire.

La société RAINBOW K JEWELRY et Mesdames Kélia TOLEDANO-BERDAH et Kelly BENHAMOU-SOUIED ont ainsi usurpé la qualité de créatrice des produits litigieux, celles-ci s'étant juste contentées de copier quasi servilement des créations de Madame OSTER.

24. Il est également relevé que la société RAINBOW K JEWELRY propose à son catalogue d'autres créations imitant également des pièces bien connues de la haute joaillerie, et en particulier de la marque Cartier.

**(Cf. Pièces 4.4 et 5.1)**

La démarche d'éviction et d'usurpation de la société RAINBOW K JEWELRY et de Mesdames Kélia TOLEDANO-BERDAH et Kelly BENHAMOU-SOUIED témoigne de leur mauvaise foi et de leur mépris pour les créations de leur consœur.

Leur absence totale de réponse aux multiples recommandés qui leur ont été adressés, et leur attitude dilatoire dans le cadre des opérations de saisie-contrefaçon confirme leur mauvaise foi et leur mépris.

**(Cf. Pièces 5 et 6.2)**

L'ensemble de ces agissements constituent des actes de contrefaçon par atteinte au droit moral de Madame Susan OSTER, et en particulier de l'atteinte à son droit à la paternité.

**D.  LES DEMANDES**

**1.  EN DROIT**

25. L'article L. 331-1-3 du Code de la Propriété Intellectuelle prévoit, en application de l'article 13 de la directive 2004/48 relative au respect des droits de propriété intellectuelle, que pour fixer les dommages et intérêts, la juridiction prend en considération distinctement les conséquences économiques négatives de l'atteinte aux droits, dont le manque à gagner et la perte subis par la partie lésée, le préjudice moral causé à cette dernière et les bénéfices réalisés par l'auteur de l'atteinte aux droits, y compris les économies d'investissements intellectuels, matériels et promotionnels que celui-ci en a retirées.

Cette disposition s'inscrit dans le cadre de la réparation intégrale du préjudice, en vertu duquel la partie lésée doit se trouver dans la situation qui aurait été la sienne en l'absence des faits litigieux, sans perte ni profit pour elle.

Par ailleurs, l'article L. 331-1-4 du même code prévoit notamment la destruction des produits contrefaisants et toute mesure appropriée de publicité, aux frais de l'auteur de l'atteinte aux droits.

**2.  EN L'ESPECE :**

26. En l'espèce, il a été demandé en vain à ce que la société RAINBOW K JEWELRY communique les éléments chiffrés permettant d'établir l'étendue de l'exploitation litigieuse.

17

Aucune réponse n'a été apportée face à ces légitimes demandes.

**(Cf. Pièce 5)**

27. Dans le cadre des premières opérations de saisie-contrefaçon effectuées le 10 avril 2025, la dirigeante de la société et la créatrice des articles litigieux ont adopté un comportement dilatoire, témoignant d'une véritable opacité comptable.

**(Cf. Pièces 6.1 et 6.2)**

A ce stade, et à défaut de la moindre donnée comptable communiquée, le préjudice économique subi peut être uniquement établi de manière provisionnel.

Les produits litigieux sont proposés à la vente au prix suivant :

**Rainbow K -** Bague Horn Pavé

Tailles : 13 tailles de 43 à 55 / 3 variations

Prix de vente au public : 3.890 euros TTC

**Pièces 4.1 et 4.2**

**Rainbow K -** Bague Horn Lignes Diamants

Tailles : 13 tailles de 43 à 55 / 3 variations

Prix de vente au public : 2.860 euros TTC

**Pièces 4.1 et 4.2**

**Rainbow K -** Bague Horn Or

Tailles : 13 tailles de 43 à 55 / 3 variations

Prix de vente au public : 2.380 euros TTC

**Pièces 4.1 et 4.2**

**Rainbow K -** Bague Horn Or Lignes Diamants noir

Tailles : 14 tailles de 43 à 56 – 3 variations

Prix de vente au public : 2.860 euros

**Pièces 4.1 et 4.2**

**Rainbow K –** Bracelet Horn – Lignes diamants (deux modèles - Femme et Homme)

Taille : 14 à 22 cm (9 tailles) – 3 variations

Prix de vente au public : 14.605 euros

**Pièces 4.1 et 4.2**

18

**Rainbow K** – Bracelet Horn – pavé

Taille : 14 à 17 cm (4 tailles) – 3 variations

Prix de vente au public : 14.605 euros

**Pièces 4.1 et 4.2**

28. Compte tenu de l'opacité de la société RAINBOW K JEWELRY, il peut être raisonnablement considéré qu'au moins un exemplaire de chacune des tailles et variations de chaque article litigieux présentées sur le site de la société RAINBOW K JEWELRY a été commercialisé.

La société RAINBOW K JEWELRY commercialise ses articles directement via son showroom et son site internet.

Il peut donc être estimé que le chiffre d'affaires brut généré par la vente des articles de la collection « Horn » ne saurait être inférieur à :
- Bague Horn Pavé : 13 tailles X 3 variations x 3.890 euros = 150.930 euros
- Bague Horn Lignes Diamants : 13 tailles x 3 variations x 2.860 euros = 111.540 euros
- Bague Horn Or : 13 tailles x 3 variations x 2380 euros = 92.820 euros
- Bague Horn Or Lignes Diamants noirs : 14 tailles x 3 variations x 2.860 euros : 120.120 euros
- Bracelet Horn Lignes Diamants : 9 tailles x 3 variations x 14.605 euros = 394.335 euros
- Bracelet Horn pavé : 4 tailles x 3 variations x 14.605 euros = 175.260 euros

Soit un montant provisionnel total de : 1.045.005 euros

Il ressort de ces éléments que le préjudice économique subi est évalué à titre provisionnel à hauteur de 1.045.005 euros.

La responsabilité personnelle et in solidum de Mesdames TOLEDANO et BENHAMOU est engagée dès lors que celles-ci reconnaissent être personnellement responsables du design des produits contrefaisants.

**(Cf. Pièces 3.3 et 6.2)**

29. Concernant le préjudice subi au titre de l'atteinte au droit moral, il apparaît que la société RAINBOW K JEWELRY et Mesdames TOLEDANO et BENHAMOU font largement la promotion sur leur site internet et les réseaux sociaux des articles litigieux.

**(Cf. Pièces 3.3 et 6.2)**

Celles-ci se présentent comme les créatrices des articles en cause qui reposent sur « un design innovant et visionnaire ». Celles-ci soutiennent avoir conçu des « modèles uniques, avec des montures et un design atypique » se distinguant par des « pièces iconiques chacune dotée d'une identité forte. »

**(Cf. Pièces 3.3 et 4.4)**

Or, en matière d'innovation et de vision, de design, et d'identité, Mesdames TOLEDANO et BENHAMOU se sont contentées de reprendre à leur compte les caractéristiques des bijoux créés par Madame Susan OSTER.

19

Cette entreprise d'usurpation de la qualité d'auteur de Madame Susan OSTER est source d'un grave préjudice, compte tenu de l'importante publicité effectuée autour de la marque RAINBOW K JEWELRY.

**(Cf. Pièces 3.4, 4.1 et 4.4)**

La forte présence de la société RAINBOW K JEWELRY et de ses dirigeantes sur les réseaux sociaux, et dans la presse invisibilise ainsi Madame Susan OSTER, qui est en réalité la véritable créatrice des articles en cause.

30. L'usurpation n'est pas limitée aux créations de la marque FERAL JEWELRY

En effet, il a été relevé que d'autres articles commercialisés par la société RAINBOW K JEWELRY reproduise les créations de grands noms de la joaillerie et de pièces iconiques des marques Cartier et Spinelli Killcollin.

**(Cf. Pièces 4.4 et 5.1)**

31. Par ailleurs, Madame Susan OSTER adopte une démarche éthique dans la conception et la création de ses articles de joaillerie. Elle fait usage de matériaux nobles dans une démarche éco-responsable et durable.

**(Cf. Pièces 1.1 et 1.4)**

Tel n'est pas le cas de la société RAINBOW K JEWELRY

En effet, c'est de manière mensongère que le site internet indique au public que les articles en cause sont de conception et de réalisation française.

Il est ainsi précisé que « *Adeptes de la perfection dans le processus de production, Rainbow K a choisi un atelier parisien réputé pour son savoir-faire inégalé.* »

**(Cf. Pièce 3.3)**

Dans le cadre des opérations de saisie-contrefaçon, il a été déclaré par Madame TOLEDANO que les articles sont fabriqués par une usine chinoise…

**(Cf. Pièce 6.2)**

Le Tribunal relèvera que les mentions commerciales de la société RAINBOW K JEWELRY sont mensongères et trompeuses pour le public qui serait amené à croire à l'acquisition d'articles reflétant le savoir-faire à la française, alors que les articles litigieux sont, en réalité, réalisés par une usine en Chine sur la base de modèles copiés à partir des créations de Madame Susan OSTER.

32. Dans ce contexte, il est demandé l'allocation d'une indemnité provisionnelle de 20.000 euros par référence concernée, soit la somme de 120.000 euros au titre du préjudice moral subi du fait de l'atteinte au droit moral de Madame Susan Oster.

La responsabilité personnelle et in solidum de Mesdames TOLEDANO et BENHAMOU est engagée dès lors que celles-ci reconnaissent être personnellement responsables du design des produits contrefaisants.

**(Cf. Pièces 3.3 et 6.2)**

33. Par ailleurs à titre de demandes accessoires, il est demandé l'interdiction de commercialisation et la destruction devant un Commissaire de justice de l'ensemble du stock des articles litigieux.

En complément, il est demandé que le dispositif de la décision à intervenir fasse l'objet d'une publication judiciaire en haut de la page d'accueil du site internet , ainsi que sur le compte Instagram « rainbowkjewelry » de la société RAINBOW K JEWELRY dans les conditions mentionnées dans le dispositif de présentes écritures.

En effet, au vu de la large promotion des articles litigieux, le rétablissement de la paternité de Madame OSTER pourra être effectué par des publications de même visibilité portant sur des supports de communication dont les défenderesses ont seules la maitrise.

## II.    A TITRE SUBSIDIAIRE, SUR LA    RRENCE DELOYALE ET PARASITAIRE

34. A titre subsidiaire et si par extraordinaire, le Tribunal devait ne pas reconnaitre les actes de contrefaçon perpétués par la société RAINBOW K JEWELRY et Mesdames TOLEDANO-BERDAH et BENHAMOU-SOUIED, il est manifeste que celles-ci ont manqué aux usages loyaux du commerce, et tiré parti de manière illégitime de la notoriété et des investissements de Madame Susan OSTER.

### 1. EN DROIT

35. L'article 1240 du code civil dispose que tout fait quelconque de l'homme, qui cause à autrui un dommage, oblige celui par la faute duquel il est arrivé à le réparer. L'article 1241 du même code ajoute que chacun est responsable du dommage qu'il a causé non seulement par son fait, mais encore par sa négligence ou par son imprudence.

Le parasitisme, qui n'exige pas de risque de confusion, consiste, pour un opérateur économique, à se placer dans le sillage d'un autre afin de tirer profit, sans rien dépenser, de ses efforts et de son savoir-faire, de la notoriété acquise ou des investissements consentis (en ce sens Cour de cassation, chambre commerciale économique et financière, 10 juillet 2018, n°16-23.694). Selon l'article 9 du Code de Procédure Civile, il incombe à chaque partie de prouver conformément à la loi les faits nécessaires au succès de sa prétention. Il incombe à celui qui allègue un acte de parasitisme d'établir le savoir-faire, le travail intellectuel, ou les efforts humains ou financiers consentis par lui, ayant permis la création d'une valeur économique individualisée ou d'une notoriété.

S'agissant de la concurrence déloyale, la concurrence déloyale doit être appréciée au regard du principe de la liberté du commerce, ce qui implique qu'un signe ou un produit qui ne fait pas l'objet de droits de propriété intellectuelle puisse être librement reproduit sous certaines conditions tenant à l'absence de faute, laquelle peut être constituée par la création d'un risque de confusion sur l'origine du produit dans l'esprit de la clientèle, circonstance attentatoire à l'exercice paisible et loyal du commerce.

L'appréciation de cette faute au regard du risque de confusion doit résulter d'une approche concrète et circonstanciée des faits de la cause prenant en compte notamment le caractère plus ou moins servile, systématique ou répétitif de la reproduction ou de l'imitation, l'ancienneté de l'usage, l'originalité et la notoriété de la prestation copiée (en ce sens Cour de cassation, chambre commerciale, 10 juillet 2018, n°16-23.694). Le succès d'une action en concurrence déloyale n'est pas subordonné à l'existence d'un rapport de concurrence entre les parties (en ce sens Cour de cassation, chambre commerciale, 3 mai 2016, n°14-24.905)

L'article 1240 du Code Civil dispose que tout fait quelconque de l'homme, qui cause à autrui un dommage, oblige celui par la faute duquel il est arrivé à le réparer. Il en résulte un principe tendant à rétablir, aussi exactement que possible, l'équilibre détruit par le dommage et de replacer la victime dans la situation où elle se serait trouvée si l'acte dommageable n'avait pas eu lieu, sans perte ni profit pour elle (en ce sens Cour de cassation, chambre commerciale, 12 février 2020, n°17-31.614). Il s'infère nécessairement d'un acte de concurrence déloyale un trouble commercial constitutif de préjudice, fût-il seulement moral (en ce sens Cour de cassation, chambre commerciale, 3 mars 2021, n°18-24.373).

## 2. EN FAIT

36. La collection Spike est la collection iconique de la marque FERAL JEWELRY créée par Madame Susan OSTER.

    Cette collection a été présentée par celle-ci lors de salons professionnels et a fait l'objet de publications, Madame Susan OSTER ayant été reconnue pour ses créations notamment au sein de l'ouvrage *100 Women in JEWELRY*.

    **(Cf. Pièce 1.1 à 1.4 et 4.4)**

    La comparaison entre les bijoux de la collection Spike et les articles litigieux de la collection Horn commercialisés par la société RAINBOW K JEWELRY ne font apparaître que de minimes différences, et relèvent ainsi de la copie servile.

    Il est manifeste que les défenderesses ont fait les économies en termes de recherche et développement de leurs produits qui sont la copie des bagues de la collection Spike de la marque FERAL JEWELRY.

    **(Cf. Pièce 4.4)**

    La collection Horn n'est donc pas le fruit d'un travail créatif de Mesdames TOLDEANO et BENAMOU, qui se sont contentées de reprendre à leur compte le design des créations de Madame Susan OSTER.

    Les défenderesses ont également décliné les articles tant en bracelets qu'en boucles d'oreilles pour présenter une gamme complète de bijoux.

37. Les défenderesses ont également réalisé des économies manifestes dès lors que les articles litigieux sont réalisés par une usine en Chine, et ne présentent donc pas les critères qualitatifs et éthique présentés par les bijoux créés et réalisés par Madame Susan OSTER.

    La société RAINBOW K JEWELRY trompe le public dès lors qu'elles présentent leurs collections comme réunissant des pièces uniques témoignant d'un savoir-faire à la française.

Tel n'est pas le cas, dès lors que les créations sont en réalité dans leur design la copie de pièces conçues et commercialisées par d'autres créateurs et marques, et que leur réalisation provient d'usines chinoises.

Monsieur David SCHWARTZ, expert, relève également que les articles de la collection Horn sont d'une qualité moindre que celle des bijoux de la collection Spike. Ces économies permettent ainsi à la société RAINBOW K JEWELRY de proposer des articles de moindre prix au public.

**(Cf. Pièce 4.4)**

Les articles de la collection Horn occupent ainsi le marché dans une véritable intention d'éviction des créations de Madame Susan OSTER qui justifie, tant de l'antériorité de ses créations, que de la démarche éthique, traçable et durable des articles de ces collections.

38. En conséquence, la commercialisation de copies serviles ou quasi servile de bijoux commercialisés par la société RAINBOW K JEWELRY dépassent les usages loyaux du commerce et constituent des actes de concurrence déloyale au préjudice de Madame Susan OSTER par la confusion ainsi créée et de la volonté de tromper le public.

De surcroît, la collection Spike est une collection iconique de la marque FERAL JEWELRY créée et exploitée par Madame Susan OSTER. Dans ce contexte, indépendamment du risque de confusion dans l'esprit du public, la société RAINBOW K JEWELRY a fait des économies manifestes en termes de création, de recherche-développement et de promotion dans le cadre de la commercialisation de la collection Horn.

Le détournement des investissements matériels et humains de Madame OSTER par la société RAINBOW K JEWELRY caractérise des actes de parasitisme économique.

La responsabilité personnelle et in solidum de Mesdames TOLEDANO et BENHAMOU est engagée dès lors que celles-ci reconnaissent être personnellement responsables du design des produits litigieux.

## 3. LES DEMANDES

Ces agissements sont la source d'un préjudice économique et moral pour Madame Susan Oster.

Concernant le préjudice économique, il peut être provisionnellement évalué à hauteur de 1.045.005 euros à défaut de justification par les défenderesses de l'étendue de l'exploitation litigieuse.

Le préjudice moral subi peut être évalué à hauteur de 120.000 euros.

Compte tenu de la large publicité donnée par la société RAINBOW K JEWELRY à ses produits et aux mentions mensongères et trompeuses figurant sur son site internet, il est demandé au Tribunal de prononcer les mesures de publication judiciaires dans les conditions spécifiées dans le dispositif des présentes écritures.

23

En outre, seule une mesure d'interdiction sera à même de rétablir commercialement la demanderesse dans ses droits.

### III.     SUR L'ARTICLE 700 DU CPC

39. Enfin, il serait particulièrement inéquitable de laisser à la charge de la concluante le montant des frais engagés dans la défense de ses intérêts, lesquels devront intégrer les frais de commissaires de justice engagés dans le cadre des opérations de saisie-contretrefaçon.

### PAR CES MOTIFS

A titre principal,

Vu les articles L. 122-1, L.122-4, L.335-2, L.335-2, L.331-1-3 et L.3331-1-4 du Code la Propriété Intellectuelle,

JUGER que la société RAINBOW K JEWELRY, Mesdames Kélia TOLEDANO-BERDAH et Kelly BENHAMOU-SOUIED, ont commis des actes de contrefaçon des bagues « Bling Spike » et « Gold Spike » dont Madame Susan OSTER est l'autrice par reproduction, adaptation, communication au public et commercialisation des articles de la collection « HORN » désignées « Bague Horn Pavé », « Bague Horn Lignes Diamants », « Bague Horn Or », « Bague Horn Ligne diamants noirs », « Bracelet Horn Lignes Diamants », et « Bracelet Horn Pavé » ;

JUGER que la société RAINBOW K JEWELRY, Mesdames Kélia TOLEDANO-BERDAH et Kelly BENHAMOU-SOUIED, ont commis des actes de contrefaçon par atteinte à la paternité de Madame Susan OSTER ;

En conséquence,

CONDAMNER in solidum la société RAINBOW K JEWELRY, Mesdames Kélia TOLEDANO-BERDAH et Kelly BENHAMOU-SOUIED à verser à Madame Susan OSTER la somme provisionnelle de **1.045.005 euros** au titre du préjudice subi du fait de l'atteinte à ses droits patrimoniaux ;

CONDAMNER in solidum la société RAINBOW K, JEWELRY Mesdames Kélia TOLEDANO-BERDAH et Kelly BENHAMOU-SOUIED à verser à Madame Susan OSTER la somme provisionnelle de **120.000 euros** au titre du préjudice moral subi du fait de l'atteinte au droit à la paternité ;

A titre subsidiaire,

Vu les articles 1240 et 1241 du Code Civil,

JUGER que la société RAINBOW K JEWELRY et Mesdames Kélia TOLEDANO-BERDAH et Kelly BENHAMOU-SOUIED ont commis des actes de concurrence déloyale et parasitaire à l'encontre de Madame Susan OSTER, exerçant sous l'enseigne FERAL JEWELRY ;

En conséquence,

CONDAMNER in solidum la société RAINBOW K JEWELRY, Mesdames Kélia TOLEDANO-BERDAH et Kelly BENHAMOU-SOUIED à verser à Madame Susan OSTER la somme provisionnelle de **1.045.000 euros** au titre du préjudice économique subi ;

24

CONDAMNER in solidum la société RAINBOW K JEWELRY, Mesdames Kélia TOLEDANO-BERDAH et Kelly BENHAMOU-SOUIED à verser à Madame Susan OSTER la somme provisionnelle de **120.000 euros** au titre du préjudice moral subi ;

En tout état de cause,

INTERDIRE à la société RAINBOW K JEWELRY, et à Mesdames Kélia TOLEDANO-BERDAH et Kelly BENHAMOU-SOUIED d'offrir à la vente, de présenter et de commercialiser les articles de joaillerie de la collection « Horn » désignés « Bague Horn Pavé », « Bague Horn Lignes Diamants », « Bague Horn Or », « Bague Horn Ligne diamants noirs », « Bracelet Horn Lignes Diamants », et « Bracelet Horn Pavé » ;

ORDONNER la destruction devant un Commissaire de justice de l'ensemble du stock des articles de joaillerie de la collection « Horn » désignés « Bague Horn Pavé », « Bague Horn Lignes Diamants », « Bague Horn Or », « Bague Horn Ligne diamants noirs », « Bracelet Horn Lignes Diamants », et « Bracelet Horn Pavé ».

ORDONNER à la société RAINBOW K JEWELRY la publication du dispositif du jugement à intervenir en haut de la page d'accueil du site internet                    , en caractère 12, et sur le compte Instagram « rainbowkjewelry » pendant une période continue de 60 jours ;

ORDONNER la publication par extraits de la décision à intervenir au sein de 3 (trois) supports de presse au choix de Madame Susan OSTER, et aux frais avancés in solidum par la société RAINBOW K JEWELRY, Mesdames Kélia TOLEDANO-BERDAH et Kelly BENHAMOU-SOUIED pour un montant de 10.000 euros HT par insertion ;

ASSORTIR les mesures d'interdiction, de destruction et de publication d'une astreinte de 1.000 euros par jour de retard passé un délai de 15 jours à compter de la signification de la décision à intervenir ;

CONDAMNER in solidum la société RAINBOW K JEWELRY, Mesdames Kélia TOLEDANO-BERDAH et Kelly BENHAMOU-SOUIED à verser à Madame Susan OSTER la somme de **20.000** euros au titre de l'article 700 du CPC, ainsi qu'aux entiers dépens lesquels comprennent les frais de constat et les opérations de saisie-contrefaçon, dont distraction au profit de la SELURL SVL AVOCAT conformément aux dispositions de l'article 699 du Code de Procédure Civile.

1. **Présentation de        Susan OSTER**

   1.1 Extraits du site internet                    (et traduction simple)
   1.2 Revue de presse (et traduction simple)
   1.3 Extraits de l'ouvrage *100 Women in jewelry* (et traduction simple)
   1.4 Notice extraite des registres de l'USPTO de la marque Feral n° 5185519 déposée par Madame Susan Oster le 26 juin 2016 (et traduction simple)

2. **Sur la collection 'Spike'**

   2.1 Notice de copyright n° VA 2-202-552 – Bling Spike Ring (et traduction simple)

2.2 Notice de copyright n° VA0002352994 – Feral Jewelry Large Spike Pendant (et traduction simple)

2.3 Extraits du site internet www.feraljewelry.com

### 3. Présentation de la société RAINBOW K JEWELRY

3.1 Extrait Kbis de la société RAINBOW K JEWELRY

3.2 Actes déposés au RCS et statuts RAINBOW K JEWELRY (source Pappers.com)

3.3 Extrait du site internet de la société RAINBOW K JEWELRY

3.4 Revue de presse

### 4.

4.1 Procès-verbal de constat d'huissier du 2 octobre 2024

4.2 Extraits du site internet Rainbow K – Collection Horn

4.3 Commande et facture d'acquisition d'une bague Horn en date du 10 septembre 2024

4.4 Rapport d'expertise de Monsieur David Schwartz, professionnel de la haute joaillerie – (version originale et traduction jurée)

### 5. Mises en demeures

5.1 Courrier de mise en demeure en date du 19 mai 2023 (et traduction jurée)

5.2 Courriel de relance en date du 21 juin 2023

5.3 Courrier de mise en demeure du 3 octobre 2024

5.4 Courriel de relance du 21 octobre 2024

### 6.

6.1 Signification de l'ordonnance du 27 mars 2025

6.2 PV de constat du 10 avril 2025 (opérations effectuées au showroom de la société RAINBOW K JEWELRY)

SCP

1166786

Acte : 63620

# PROCES VERBAL DE REMISE
# A PERSONNE MORALE

e l'acte signifié : une ASSIGNATION

e signification : 23 avril 2025

ataire : **S.A.S RAINBOW K JEWELRY**, 5 rue de Castiglione 75001 PARIS

icile étant certain ainsi qu'il résulte des vérifications suivantes :
La personne rencontrée sur place confirme le domicile.

Cet acte a été  signifié par Clerc assermenté, parlant à Monsieur HAMMA Thomas, Employé Bureau Club, ainsi déclaré, rencontré(e) dans les lieux, qui a déclaré être habilité(e) à recevoir la copie.

La lettre prévue à l'article 658 du Code de Procédure Civile, contenant copie de l'acte a été adressée dans le délai légal.

etude@simonin-huissier.com

www.simonin-huissier.com

**Compte banque :**
**IBAN**
FR7618206000106508522436551
**BIC** : AGRIFRPP882

Accepte le paiement par carte
bancaire        léphone

## ACTE
## D'HUISSIER
## DE
## JUSTICE

Les mentions relatives à la signification sont visées par l'Huissier de Justice.

*[ ] Gérald SIMONIN*

*Eric LE MAREC*

REFERENCES A RAPPELER
1166786 - MK

COUT DE L'ACTE
Emol.        180,36
SCT            9,40
Copies        21,50
-------
H.T.         211,26
Tva 20%       42,25
Timbres        2,99
-------
T.T.C        256,50

717

April 23, 2025:

Counterfeit Summons filed by Oster before the Court of First Instance of Paris, requesting:

PRIMARILY,
Having regard to Articles L. 122-1, L.122-4, L.335-2, L.335-2, L.331-1-3, and L.3331-1-4 of the Intellectual Property Code,
FIND that RAINBOW K JEWELRY, Ms. Kélia TOLEDANO-BERDAH and Ms. Kelly BENHAMOU-SOUIED, have committed acts of counterfeiting of the "Bling Spike" and "Gold Spike" rings designed by Ms. Susan OSTER by reproducing, adapting, communicating to the public, and marketing items from the "HORN" collection designated as "Horn Pavé Ring," "Horn Diamond Lines Ring," "Horn Gold Ring," "Horn Black Diamond Lines Ring," "Horn Diamond Lines Bracelet," and "Horn Pavé Bracelet";
FIND that RAINBOW K JEWELRY, Ms. Kélia TOLEDANO-BERDAH, and Ms. Kelly BENHAMOU-SOUIED have committed acts of infringement by violating the authorship rights of Ms. Susan OSTER;
Consequently,
ORDER RAINBOW K JEWELRY, Ms. Kélia TOLEDANO-BERDAH, and Ms. Kelly BENHAMOU-SOUIED to pay Ms. Susan OSTER the provisional sum of €1,045,005 for damages suffered as a result of the infringement of her economic rights;
ORDER RAINBOW K, JEWELRY, Ms. Kélia TOLEDANO-BERDAH, and Ms. Kelly BENHAMOU-SOUIED jointly and severally to pay Ms. Susan OSTER the provisional sum of €120,000 for non-pecuniary damage suffered as a result of the infringement of her right to paternity;
ALTERNATIVELY,
Pursuant to Articles 1240 and 1241 of the Civil Code,
RULES that RAINBOW K JEWELRY and Ms. Kélia TOLEDANO-BERDAH and Ms. Kelly BENHAMOU-SOUIED committed acts of unfair and parasitic competition against Ms. Susan OSTER, operating under the name FERAL JEWELRY;
Consequently,
ORDER RAINBOW K JEWELRY, Ms. Kélia TOLEDANO-BERDAH, and Ms. Kelly BENHAMOU-SOUIED to pay Ms. Susan OSTER the provisional sum of €1,045,000 for the economic damage suffered;
ORDER RAINBOW K JEWELRY, Ms. Kélia TOLEDANO-BERDAH, and Ms. Kelly BENHAMOU-SOUIED to pay Ms. Susan OSTER the provisional sum of €120,000 for non-economic damages suffered;
IN ANY EVENT,
PROHIBIT RAINBOW K JEWELRY, Ms. Kélia TOLEDANO-BERDAH, and Ms. Kelly BENHAMOU-SOUIED from offering for sale, displaying, and marketing the jewelry items from the "Horn" collection designated as "Horn Pavé Ring," "Horn Diamond Lines Ring," "Horn Gold Ring," "Horn Black Diamond Line Ring," "Horn Diamond Line Bracelet," and "Horn Pavé Bracelet";
ORDER the destruction before a judicial officer of the entire stock of jewelry items from the "Horn" collection designated "Horn Pavé Ring," "Horn Diamond Lines Ring," "Horn Gold Ring," "Horn Black Diamond Line Ring," "Horn Diamond Line Bracelet," and "Horn Pavé Bracelet."
ORDER RAINBOW K JEWELRY to publish the operative part of the judgment to be rendered at the top of the home page of the website wvv•N.rainbovvkjewelry.com, in 12-point font, and on the Instagram account "rainbowkjewelry" for a continuous period of 60 days;

ORDER the publication of excerpts from the decision to be rendered in three (3) media outlets of Ms. Susan OSTER's choosing, at the expense of RAINBOW K JEWELRY, Ms. Kélia

TOLEDANO-BERDAH, and Ms. Kelly BENHAMOU-SOUIED, in the amount of €10,000 excluding tax per insertion;

COMBINE the measures of prohibition, destruction, and publication with a penalty payment of €1,000 per day of delay after a period of 15 days from the date of notification of the decision to be made;

ORDER RAINBOW K JEWELRY, Ms. Kélia TOLEDANO-BERDAH, and Ms. Kelly BENHAMOU-SOUIED to pay Ms. Susan OSTER the sum of €20,000 pursuant to Article 700 of the French Code of Civil Procedure, as well as all costs, including the costs of the report and the seizure of counterfeit goods, to be paid to SELURL SVL AVOCAT in accordance with the provisions of Article 699 of the Code of Civil Procedure.