# Exhibit B

| | |
|---|---|
| Conclusions signifiées le 23 juillet 2025 | A Madame ou Monsieur le Juge de la Mise en état de la 3è Chambre 2 Section du Tribunal Judiciaire de Paris |
| R.G. n° 25/05477 | |

## CONCLUSIONS D'INCIDENT

POUR

**Madame Susan OSTER**
Née le 24 mars 1964 à Philadelphie (Pennsylvanie), de nationalité américaine, exerçant la profession de créatrice de bijoux, demeurant 1880 Century Park East, Suite 900, Los Angeles, CA, 90067, Etats-Unis d'Amérique, élisant domicile au cabinet SVL AVOCAT – représentée par Me Sophie VIARIS de LESEGNO - 17 boulevard Raspail 75007 Paris

*Demanderesse à l'incident*

Ayant pour avocat :   **SVL AVOCAT**
　　　　　　　　　　　**Maître Sophie VIARIS de LESEGNO**
　　　　　　　　　　　**Avocate au Barreau de Paris**
　　　　　　　　　　　17, boulevard Raspail – 75007 Paris
　　　　　　　　　　　Tel. : 01 53 74 10 80 – 06 77 41 41 71
　　　　　　　　　　　Mail : sophie.viaris@svlavocat.fr
　　　　　　　　　　　Toque G605

CONTRE

1. **RAINBOW K JEWELRY**
   SAS au capital de 17.000 euros, dont le siège se situe 5 rue de Castiglione 75001 Paris, immatriculée au RCS de Paris sous le numéro B 847 936 671, prise en la personne de son représentant légal ;

2. **Madame Kelly BENHAMOU - SOUEID**
   Née le 19 juillet 1990 à Antibes, de nationalité française, demeurant 28 rue Sedaine 75011 Paris

3. **Madame Kélia TOLEDANO – BERDAH**
   Née le 6 septembre 1990 à Paris, de nationalité française, demeurant 17, rue Cernuschi 75017 Paris

*Défenderesse à l'incident*

Ayant pour avocat :   **ipSO, Société (selàrl) d'Avocats au Barreau de Paris**
　　　　　　　　　　　**Maître Pascal BECKER,**
　　　　　　　　　　　**Avocat au Barreau de Paris,**
　　　　　　　　　　　5, Rue Murillo, 75008 Paris,
　　　　　　　　　　　becker@ipso.pro, tél : 01.53.93.65.05,

1

**PLAISE AU JUGE DE LA MISE EN ETAT**

**EXPOSE DES FAITS**

- **Madame Susan OSTER**

1. Madame Susan OSTER est une créatrice de bijoux américaine réalisant sous la marque FERAL des pièces de Haute Joaillerie.

   Madame Susan OSTER a développé avec succès son activité depuis l'année 2016.

   Celle-ci est une créatrice engagée dans le développement durable, sublimant, dans une démarche éco-responsable, des matériaux nobles et/ou précieux à travers des créations inspirées de la nature et du monde sauvage nord-américain.

   Madame OSTER adopte une éthique stricte et refuse notamment de travailler avec la galvanoplastie[1] ou des produits nuisant à l'environnement.

   L'originalité de ses créations a été saluée par la presse, celle-ci ayant été également retenue au sein de l'ouvrage *100 Women in Jewelry*, publié en 2022.

   **(Cf. Pièce 1.1 à 1.4)**

2. Les créations de Madame OSTER reflètent un esprit glamour, sauvage, indomptable et sans artifice.

   Elles sont commercialisées aux Etats-Unis et en France auprès de revendeurs premium.

   Madame Susan OSTER présente également ses créations lors de salons professionnels de Haute Joaillerie aux Etats-Unis, lesquels accueillent des publics et exposants de toutes nationalités.

   **(Cf. Pièces 1.1 à 1.3)**

- **La collection « Spike »**

3. Parmi les collections créées par Madame OSTER, la collection « Spike » est celle qui est la plus emblématique.

   Cette collection réinterprète les extrémités des bois et cornes d'animaux sauvages.

   Celle-ci a été commercialisée à compter de l'année 2017 et a fait l'objet de deux enregistrements auprès du Copyright Office américain.

   **(Cf. pièce 2.1 à 2.3)**

---

1. Procédé de placage par électrolyse utilisé en orfèvrerie.

2

4. Cette collection est déclinée autour de bagues réalisées dans différentes variations, de pendentifs et boucles d'oreilles, fabriqués à partir de pierres et métaux précieux, de cristal, d'onyx et/ou de véritables bois d'élan.

Cette collection a été saluée par la presse aux États Unis et a fait l'objet d'une publication en France au sein du magazine de Mode L'Officiel en octobre 2018.

**(Cf. Pièces 1.2 et 2.3)**



**Collection Spike**

3

- **La société RAINBOW K JEWELRY**

5. RAINBOW K JEWELRY est une société française de création et de vente d'articles de joaillerie fondée en 2019.

   Cette société française développe une activité commerciale internationale en particulier aux Etats-Unis.

   Cette société française dispose :

   - D'un siège social situé au 17 rue Cernuschi 75017 selon les mentions légales portées sur son site internet, et au 5 rue de Castiglione 75001 Paris selon son extrait, K Bis ;

   - D'un showroom situé 26 avenue Montaigne, 75008 Paris, accessible uniquement sur rendez-vous préalable ;

   - D'une boutique en ligne accessible à l'adresse www.rainbowkjewelry.com ;

   - D'un réseau de distributeurs à l'international (France, Etats-Unis, Monaco, Dubaï, Qatar et Liban) et en ligne (Farfetch, MyTheresa, Sense, Moda Operandi, etc.)..

   **(Cf. Pièces 3.1 à 3.3)**

6. L'entreprise a été fondée par Mesdames Kélia TOLEDANO-BERDAH et Kelly BENHAMOU-SOUIED.

   Madame Kelia TOLEDANO-BERDAH a assuré la présidence de l'entreprise du 1$^{er}$ février 2019 au 1$^{er}$ juillet 2019.

   **(Cf. Pièces 3.1 et 3.2)**

   Madame Kelia TOLEDANO-BERDAH est décrite sur le site internet de l'entreprise comme la créatrice des collections et la directrice artistique de la marque RAINBOW K JEWELRY.

   Madame Kelly BENHAMOU-SOUIED est l'actuelle présidente de l'entreprise.

   Se présentant comme gemmologue, elle est également décrite comme co-créatrice des collections de la marque RAINBOW K JEWELRY.

   **(Cf. Pièces 3.3)**

- **Exploitations litigieuses – la collection « HORN » de RAINBOW K JEWELRY**

7. Dans le courant de l'année 2023, Madame Susan OSTER a eu la surprise de découvrir lors de salons professionnels et dans des publications sur les réseaux sociaux, la présentation et la commercialisation par la marque française RAINBOW K JEWELRY d'une collection intitulée « Horn » composée d'articles de joaillerie déclinant des bagues, bracelets et boucles d'oreilles.

   **(Cf. Pièce 4.2)**

4

Or, cette collection reproduit les caractéristiques essentielles et imite les articles de la collection « Spike » de Madame OSTER.

**Collection Horn**



*Ci-dessus bagues Horn femme*



*Ci-dessus bagues Horn Lignes Diamants noirs homme*



*Ci-dessus bracelets Horn – femmes et hommes*



*Ci-dessus boucles d'oreilles Horn*

*Ci-dessus boucles d'oreilles Horn – femmes et hommes*

**Collection Horn**

**(Cf. Pièce 4.2)**

Les ressemblances présentées entre la collection « Horn » de RAINBOW K JEWELRY avec la collection « Spike » de la marque FERAL de Susan OSTER sont telles qu'elles ne peuvent relever de la coïncidence.

Confrontée à des imitations aussi grossières et au vu de leur promotion massive par RAINBOW K JEWELRY, Madame Susan OSTER a transmis ce dossier à ses conseils.

5

**(Cf. Pièces 4.1 à 4.4)**

- **Les tentatives infructueuses de règlement amiable**

8. Par courrier en date du 19 mai 2023, le cabinet JRSND, conseils américains de Madame Susan OSTER, rappelait à la société RAINBOW K JEWELRY, l'antériorité des droits de Madame OSTER et l'enregistrement auprès du Copyright Office américain du bijou « Bling Spike Ring » de la collection « Spike ».

    La société RAINBOW K JEWELRY était ainsi mise en demeure de :

    - Cesser toute commercialisation et offre à la vente des articles de la collection « Horn » ;
    - Confirmer l'engagement de cesser toute présentation, promotion, commercialisation ou vente de tout article contrefaisant la collection « Spike », en particulier lors de salons professionnels ;
    - Communiquer le montant des revenus bruts générés par la vente des articles litigieux.

    Devant l'absence de réponse de la société RAINBOW K JEWELRY, ces demandes étaient réitérées par courriel en date du 21 juin 2023.

    Aucune réponse n'a été apportée à ce courrier de relance.

    **(Cf. Pièces 5.1 et 5.2)**

9. Malgré ces mises en demeure, Madame Susan OSTER constatait la poursuite des agissements litigieux de la société RAINBOW K JEWELRY et la très large publicité faite par ses créatrices autour de la collection « Horn », qui était présentée comme une collection de bijoux originaux.

    Devant cette démarche d'appropriation illégitime et d'éviction, Madame Susan OSTER sollicitait son cabinet français de conseils en propriété industrielle afin de réitérer les mises en demeure précédemment adressées.

    Ainsi par courrier recommandé en date du 3 octobre 2024, le cabinet BRANDSTORMING mettait en demeure la société RAINBOW K JEWELRY de :

    - Cesser toute distribution et commercialisation de quelque nature que ce soit de l'ensemble des modèles de la collection « Horn » ;

    - Cesser toute promotion et diffusion de quelque nature que ce soit de l'ensemble des modèles de la collection « Horn » ;

    - Reconnaître formellement les droits antérieurs de Madame Susan OSTER sur ses créations et en particulier sur la collection « Spike » ;

    - S'engager à cesser toute reproduction, représentation et diffusion de tout article identique ou similaire aux créations antérieures de Susan OSTER, et/ou reprenant l'une ou l'autre de leur(s) caractéristique(s) essentielle(s).

6

Si ce courrier de mise en demeure a bien été réceptionné par la société RAINBOW K JEWELRY tant à son siège qu'à son showroom, puis confirmé par la suite par courrier électronique envoyé à l'adresse contact@rainbowkjewelry.com le 21 octobre 2024, cette dernière n'a pas daigné y apporter la moindre réponse.

**(Cf. Pièces 5.3 et 5.4)**

10. C'est dans ce contexte que Madame Susan OSTER a été autorisée par ordonnances en date du 27 mars 2025 à faire opérer les mesures suivantes :

    - Faire procéder à la description par photographie des bagues et des bracelets intitulés « Horn » argués de contrefaçon, en stocks ou proposés à la vente par la société RAINBOW K JEWERLY sous les références suivantes :
        – Bague Horn Pavé / Ring Horn full Diamonds
        – Bague Horn Lignes Diamants / Ring Horn Hoop Diamonds
        – Bague Horn Or / Ring Horn gold
        – Bague Horn Ligne Diamants noirs / Ring Horn Hoop black Diamonds
        – Bracelet Horn Lignes Diamants / Bangle Horn Hoop Diamonds
        – Bracelet Horn pavé / Bangle Horn Pave

    - Autoriser le Commissaire de justice instrumentaire à accompagner un tiers prenant préalablement rendez-vous au showroom afin d'effectuer ses opérations de constat ;

    - Autoriser le Commissaire de justice commis à faire toutes recherches et constatations, afin de découvrir l'origine, la consistance et l'étendue des actes de contrefaçon allégués en :

        – Se faisant produire ou au besoin copier ou reproduire les livres de compte et factures
        – Se faisant produire, copier ou reproduire les pièces comptables relatives au nombre de produits litigieux vendus au jour de la saisie ainsi que le nombre de ceux demeurant en stock, et les différents magasins, détaillants ou grossistes auprès desquels les produits litigieux ont été vendus et sont encore disponibles
        – Consignant les déclarations des répondants et toutes paroles prononcées au cours des opérations
        L'ensemble, même en l'absence sur place des articles argués de contrefaçon

    - Autoriser le Commissaire de justice instrumentaire, après avoir rappelé à chacun son droit au silence, à interroger les personnes présentes sur place sur l'origine des articles argués de contrefaçon et à consigner les déclarations des répondants et toutes paroles prononcées au cours des opérations ;

    - Autoriser le Commissaire de justice commis à saisir par voie de description ou copie les prospectus, visuels et campagnes publicitaires, brochures, catalogues, notices, tarifs d'où pourraient résulter l'origine, la consistance et l'étendue des faits argués de contrefaçon, et ce même en l'absence sur place des articles argués de contrefaçon et obtenir le nombre de tirages de chacun des supports publicitaires précités et ce, même en l'absence sur place des modèles argués de contrefaçon ;

    - Autoriser le Commissaire de justice commis à viser et parapher ne varietur et copier les livres, carnets de commande et d'expédition, lettres, contrats qui seraient trouvés sur les lieux des opérations et qui permettraient de prouver l'origine, la consistance et l'étendue des faits argués de contrefaçon en vue de déterminer le chiffre d'affaires généré par la

7

vente des six articles argués de contrefaçon et ce même en l'absence sur place des modèles argués de contrefaçon ;

- Autoriser le Commissaire de justice commis à se faire, le cas échéant, accompagner par un serrurier, par un représentant de la force publique et par un sachant ou un informaticien compétent pour l'assister dans ses missions ;

- Dire que le Commissaire de justice devra dresser de ses opérations un procès-verbal incluant, le cas échéant en annexe, l'intégralité des pièces et fichiers saisis dans les trois jours ouvrés suivant les opérations de saisie-contrefaçon ;

- Dire que les pièces saisies pourront éventuellement être placées sous séquestre provisoire sur demande du saisi afin d'assurer la protection du secret des affaires dans les conditions des articles R.332-1 du code de la propriété intellectuelle et R. 153-1 du code de commerce ;

- Dire qu'en cas de difficultés, il en sera référé au Président du Tribunal en cantonnement ou mainlevée, mais seulement après l'accomplissement total des opérations de saisie ;

- Dire que le Commissaire de justice devra accomplir sa mission dans un délai de 2 (deux) mois à compter de l'ordonnance à intervenir.

**(Pièce 6.1)**

11. C'est dans ce contexte que Maître Éric LE MAREC, commissaire de Justice, a signifié les ordonnances rendues, et s'est présenté au showroom de la société RAINBOW K JEWELRY le 10 avril 2025 afin d'effectuer les opérations de saisie.

**(Pièces 6.1 et 6.2)**

Lors de ces opérations, le Commissaire de justice a pu confirmer la présence dans les lieux de cinq des six articles litigieux.

Interrogée par téléphone lors des opérations de constat, Madame Kélia TOLEDANO-BERDAH confirmait être personnellement la créatrice des modèles en cause, et avoir connaissance des revendications de Madame Susan OSTER.

Elle précisait que les articles litigieux avaient été conçus en début d'année 2022 et étaient réalisés par une usine en Chine.

Or, concernant les mesures d'information comptable ordonnées, Madame TOLEDANO se contentait d'indiquer que les articles n'auraient pas rencontré « un franc succès », et qu'elle devait partir en congés.

Le même jour, il était demandé par courriel la transmission des éléments comptables relatifs aux articles en cause, en particulier concernant le chiffre d'affaires généré, et l'état des stocks des articles visés par ordonnance.

L'époux de Madame TOLEDANO, lequel n'a aucune fonction au sein de l'entreprise et n'en est pas associé, indiquait à Maître LE MAREC que son épouse s'engageait à communiquer les pièces ordonnées à son retour de congés, le 21 ou le 22 avril 2025.

**(Pièce 6.2)**

8

12. Conformément aux dispositions de l'article L.332-3 du Code de la Propriété Intellectuelle, Madame Susan OSTER a, par acte en date du 23 avril 2025, assigné en contrefaçon la société RAINBOW K JEWERLY, Madame BENHAMOU-SOUIED et Madame Kélia TOLEDANO-BERDAH.

    L'affaire est enrôlée sous le numéro RG n°25/05477.

13. Le 25 avril 2025, le conseil de la société RAINBOW K JEWERLY adressait un mail officiel à Maître LE MAREC intégrant un simple tableau faisant état d'un nombre allégué d'exemplaires vendus *'selon les données communiquées par sa cliente'*.

    **(Pièce 6.3)**

    Aucune pièce comptable n'était produite à l'appui de cette déclaration. Le tableau n'était pas certifié par un expert-comptable ni un commissaire aux comptes.

    Le 29 avril 2025, Maître LE MAREC contestait la conformité et l'exhaustivité des éléments communiqués en ces termes :

    > Jusqu'à présent, force est de constater que votre cliente fait ainsi preuve d'un complet mépris pour cette ordonnance et les opérations que je suis chargé de mener.
    >
    > J'attends donc, par retour, communication des pièces comptables attestant du nombre d'exemplaires vendus de ces 6 articles depuis leur commercialisation, avec mention de leur prix de vente, à savoir les factures clients et les extraits comptables, certifiés par l'expert-comptable de la société, permettant de justifier de l'exhaustivité des ventes déclarées,
    > accompagnées des bons de commandes, factures et bons de livraison des fabricants et prestataires, de l'état des stocks certifiés par expert-comptable, des documents de dédouanement, bons de livraison et pièces echangées avec le transitaire déclaré, la société VDH, ou tout autre.
    >
    > Par ailleurs, je vous invite, comme je l'ai indiqué à Mme Toledano, à joindre à votre envoi, tous documents justifiant et illustrant le processus créatif des bijoux argués de contrefaçon.

    **(Pièce 6.3)**

14. Le 5 mai 2025, le conseil de la défenderesse communiquait un tableau contredisant le précédent tableau communiqué, celui-ci invoquant une 'erreur de date'.

    Un fichier pdf était communiqué comportant des factures non certifiées et caviardant des mentions prescrites par l'ordonnance (en particulier l'identification des acquéreurs/revendeurs des produits).

    Il apparaît que le dernier tableau communiqué déclarait la vente d'un exemplaire complémentaire constitué par celui acquis par Madame OSTER pour les besoins de la procédure… Or, la facture produite par la société RAINBOW K JEWERLY ne porte pas les mêmes mentions que la facture remise au client…

9



| *Pièce 4.3* | *Extrait du PV de carence établi par Me LE MAREC Pièce 6.3* |

La tenue de la comptabilité de cette société semble ainsi suspicieuse, tout comme les imprécisions portant sur les adresses auxquelles la demanderesse conserve ses documents comptables puisque les deux factures mentionnent des sièges différents.

Maître LE MAREC relançait en vain le conseil de la société RAINBOW K JEWERLY les 6 mai et 26 mai 2025 afin que les éléments conformes aux ordonnances soient communiqués.

Aucune réponse n'a été apportée à ces demandes.

**(Pièce 6.3)**

15. Le 3 juin 2025, Maître LE MAREC dressait un procès-verbal de carence constatant :

    - Le refus de collaboration de Madame TOLEDANO qui, malgré les engagements pris n'a pas repris contact avec le commissaire de justice ;

    - Une absence d'adresse réelle de l'entreprise permettant de reprendre les opérations et en particulier d'accéder à ses éléments comptables.

**(Pièce 6.3)**

16. Le 15 juillet 2025, une sommation de communiquer a été délivrée aux défenderesses afin qu'elles communiquent les pièces comptables exhaustives et conformes aux mesures prononcées dans le cadre des opérations de saisie-contrefaçon.

**(Pièce 6.4)**

10

Pour seule réponse, une attestation du comptable de la société RAINBOW K JEWELRY a été produite, selon laquelle celui-ci « atteste sur l'honneur » que la société a réalisé des marges dont les montant sont établis « en conformité avec le tableau récapitulatif et les factures annexes ».

Or, le tableau en question est un tableau excel qui ne semble pas avoir été établi par le comptable mais par la société, et qui n'est corroboré par aucune pièce comptable permettant de déterminer le calcul de la marge ainsi déclarée.

Il est manifeste que le comptable n'a pas eu accès à la comptabilité globale de l'entreprise pour établir son attestation, mais s'est contenté de reprendre les données d'un tableau excel et de pointer des numéros de factures de ventes partiellement caviardées…

Cette « attestation » est donc non conforme aux mesures ordonnées dans le cadre des opérations de saisie-contrefaçon et renforce l'opacité comptable de la société RAINBOW K JEWELRY.

**(Pièce 6.5)**

17. Il ressort de ces éléments que la société RAINBOW K JEWERLY n'entend délibérément pas exécuter loyalement les mesures ordonnées.

    Cette réticence et la volonté de dissimulation sont la source de difficultés, raisons pour lesquelles Madame Susan OSTER est contrainte de requérir du Juge de la Mise en état que les mesures ordonnées par les ordonnances en saisie-contrefaçon soient assorties d'astreintes.

    En outre, le commissaire de justice a relevé l'opacité des défenderesses portant sur leur domicile réel.

    Il est donc également demandé que celles-ci puissent justifier de leur domicile réel et effectif.

**DISCUSSION**

    **I.**    **SUR LE DROIT À INFORMATION**

**A. EN DROIT**

18. Le juge de la Mise en état dispose en vertu des dispositions générales de l'article 788 du code de procédure civile des pouvoirs nécessaires à la communication, à l'obtention et à la production de pièces.

    En vertu des dispositions spéciales du code de la propriété intellectuelle en matière de droits d'auteur visées à l'article L331-1-2., le juge de la Mise en état :

    *« peut ordonner, au besoin sous astreinte, afin de déterminer l'origine et les réseaux de distribution des marchandises et services qui portent prétendument atteinte aux droits du demandeur, la production de tous documents ou informations détenus par le défendeur ou par toute personne qui a été trouvée en possession de telles marchandises ou fournisseur de tels services ou a été signalée comme intervenant dans la production, la fabrication ou la distribution de ces marchandises ou la fourniture de ces services.*

11

*La production de documents ou d'informations peut être ordonnée s'il n'existe pas d'empêchement légitime. »*

En outre, selon l'article 789-4° du Code de Procédure Civile, le Juge de la Mise en état peut ordonner toutes autres mesures ainsi que modifier ou compléter les mesures qui auraient déjà été prises.

**B. EN L'ESPECE**

19. Le commissaire de justice instrumentaire a relevé dans son procès-verbal de carence, que la défenderesse n'a pas exécuté de bonne foi les mesures ordonnées par le Président du Tribunal Judiciaire de Paris. **(Pièce 6.3)**

    Il a été rappelé le caractère non exhaustif des pièces comptables communiquées qui caviardent des informations, en particulier concernant la destination des produits argués de contrefaçon.

    De même, il est manifeste qu'il existe une différence de forme entre la facture émise à la clientèle de la société RAINBOW K JEWELRY et celles-produites en exécution de la saisie-contrefaçon. **(Pièces 4.3 et 6.3)**

    Les informations comptables ont fluctué, et aucune déclaration n'a été faite concernant le nombre de pièces en stock, celles fabriquées, ni la production des livres comptables susceptibles d'établir l'exhaustivité des factures communiquées. **(Pièce 6.3)**

    La seule précision faite par le comptable de l'entreprise concerne une prétendue marge dont la détermination n'est appuyée par aucune pièce. **(Pièce 6.5)**

20. Il sera précisé que la société RAINBOW K JEWELRY n'hésite pas à présenter sur son site internet ses produits comme fabriqués en France. Or, ils sont en réalité fabriqués par une usine en Chine comme il l'a été indiqué à Maître LE MAREC. **(Pièces 3.3 et 6.2)**

    Aucune autre information n'a été communiquée sur les fournisseurs de la société RAINBOW K JEWELRY.

    La fiabilité et la sincérité des pièces comptables communiquées, doit donc être corroborée par la production des états des stocks, lesquels devront être accompagnés des bons de commandes, des factures et bons de livraison des fabricants et prestataires, des documents de dédouanement, des bons de livraison et des pièces échangées avec le transitaire déclaré, soit la société VDH, ou toute autre transitaire.

    De même, afin de justifier de l'exhaustivité des informations communiquées, un tirage de la comptabilité de l'entreprise doit être communiqué.

21. La société RAINBOW K JEWELRY ne peut à ce sujet soulever un empêchement à la communication de ces pièces dès lors que la dirigeante de l'entreprise s'était engagée à les communiquer lors des opérations de saisie-contrefaçon. **(Pièce 6.2)**

    A ce jour, les quelques éléments communiqués sont donc très insuffisants au regard de l'objet de l'ordonnance en saisie-contrefaçon pour permettre à la demanderesse d'évaluer le préjudice subi.

Il sera rappelé que la société RAINOW K JEWELRY n'a jamais daigné apporter la moindre réponse aux multiples mises en demeures qui lui ont été adressées préalablement à l'introduction de la présente procédure.

Au vu de la réticence délibérée de la société RAINBOW K JEWELRY à respecter les mesures prononcées par l'ordonnance du 27 mars 2025, il est demandé au Juge de la Mise en état que les mesures prononcées soient réitérées, et que celles-ci soient assorties d'astreintes.

## II. SUR LA JUSTIFICATION DU DOMICILE EFFECTIF DES DEFENDERESSES

22. L'indication d'une adresse inexacte dans un acte de procédure ou la dissimulation du domicile réel constitue une atteinte au principe de loyauté procédurale et fait grief, notamment en ce qu'elle nuit à l'exécution forcée d'un jugement.

    Dans le cadre des opérations de saisie-contrefaçon, il est apparu que la société RAINBOW K JEWELRY déclare son siège au sein d'une entreprise de domiciliation. **(Pièces 6.2 et 6.3)**

    La société RAINBOW K JEWELRY dispose d'un showroom à une adresse prestigieuse avenue Montaigne, qui est un lieu occupé de manière éphémère et ponctuelle, dès lors que les clients ne peuvent être accueillis que sous réserve d'une prise de rendez-vous préalable.

    En outre, les mentions légales de son site internet marchand mentionnent un siège effectif situé 17 rue Cernuschi dans le 17è arrondissement de Paris, qui était également le domicile déclaré de Madame TOLEDANO.

23. Or, dans le cadre des opérations de saisie-contrefaçon, Madame TOLEDANO a déclaré qu'elle ne se trouvait pas rue Cernuschi.

    En outre, lors de la signification à partie de l'assignation au fond, Maître LE MAREC s'est rendu à l'adresse en question, dernier domicile connu de Madame TOLEDANO.

    Il est apparu que cette dernière, tout comme la société RAINBOW K JEWELRY, est inconnue à cette adresse.

    Maître LE MAREC a interrogé directement Madame TOLEDANO par téléphone et par sms, laquelle n'a pas daigné retourner son appel afin de justifier de son domicile.

    L'adresse demeure pourtant mentionnée dans l'acte de constitution établi par les défenderesses comme le domicile de Madame TOLEDANO.

    Il est manifeste que Madame TOLEDANO entend dissimuler son domicile réel, qui selon toute vraisemblance constitue également le siège administratif de l'entreprise puisque dans le cadre des opérations de saisie-contrefaçon, la préposée interrogée sur le lieu du showroom a précisé que la facturation était établie à distance par Madame TOLEDANO. **(Pièce 6.2)**

24. En outre, l'adresse mentionnée au 17 rue Cernuschi 75017 Paris est le siège effectif déclaré sur le site internet de la société RAINBOW K JEWELRY sur sa boutique en ligne.

    S'agissant d'un site de e-commerce, il appartient à la défenderesse de mentionner son siège réel afin de garantir la transparence et la loyauté dans ses relations commerciales en ligne, en particulier vis-à-vis des consommateurs.

Il s'agit en la matière d'une obligation légale, prescrite par les dispositions de l'article 19 de la LCEN en vertu duquel toute entreprise de e-commerce doit notamment mentionner : « L'adresse où elle est établie. ».

Au vu de la dissimulation délibérée des défenderesses, il est ainsi indispensable que la société RAINBOW K JEWELRY et Madame TOLEDANO produisent les pièces justifiant de leur domicile effectif.

Compte tenu de la mauvaise foi des défenderesses, il est demandé que ces pièces soient communiquées sous astreintes.

25. La demanderesse a été contrainte d'introduire le présent incident au vu de la mauvaise foi et de la réticence des défenderesses à exécuter loyalement les mesures ordonnées par le Président du Tribunal Judiciaire.

Au lieu de s'exécuter spontanément et loyalement, celles-ci ont préféré partir en congés, puis dans des salons professionnels à l'étranger tout en multipliant les publications sur les réseaux sociaux dans lesquelles elles présentent les bracelets argués de contrefaçon. **(Pièce 6.6)**

Ceci démontre la grande légèreté des défenderesses, et le mépris qu'elles ont pour les décisions judiciaires rendues, raison pour laquelle l'application d'une astreinte est nécessaire.

Enfin, il serait particulièrement inéquitable de laisser à la charge de la concluante le montant des frais qu'elle a été contrainte d'engager dans le cadre du présent incident.

**PAR CES MOTIFS**

Il est demandé au Juge de la Mise en état,

Vu les articles 788 et 789 du Code de Procédure Civile ;
Vu les ordonnances de saisie-contrefaçon du 27 mars 2025 ;
Vu l'article L.331-1-2 du Code de la Propriété Intellectuelle ;

ORDONNER à la société RAINBOW K JEWELRY :

De communiquer les informations comptables portant sur les articles :
- Bague Horn Pavé / Ring Horn full Diamonds
- Bague Horn Lignes Diamants / Ring Horn Hoop Diamonds
- Bague Horn Or / Ring Horn gold
- Bague Horn Ligne diamants noirs / Ring Horn Hoop black Diamonds
- Bracelet Horn Lignes Diamants / Bangle Horn Hoop Diamonds
- Bracelet Horn Pavé / Bangle Horn Pave

Et en particulier :

COMMUNIQUER tous documents, factures et pièces comptables relatives au nombre de produits litigieux vendus, ainsi que le nombre de ceux demeurant en stock, et les différents magasins/détaillants ou grossistes auprès desquels les produits litigieux ont été vendus et sont encore disponibles ;

14

DIRE que les factures clients, les extraits comptables et états des stocks, devront être accompagnés des bons de commandes, des factures et bons de livraison des fabricants et prestataires, des documents de dédouanement, des bons de livraison et des pièces échangées avec le transitaire déclaré, soit la société VDH, ou toute autre transitaire ;

COMMUNIQUER un tirage imprimé ou un envoi électronique de la comptabilité informatisée en tous lieux où elle se trouverait, laissant apparaître le montant du chiffre d'affaires généré par les ventes des six articles litigieux ;

COMMUNIQUER tous prospectus, visuels et campagnes publicitaires, brochures, catalogues, notices, tarifs d'où pourraient résulter l'origine, la destination et l'étendue des faits allégués de contrefaçon, et obtenir le nombre de tirages de chacun des supports publicitaires précités ;

DIRE que les pièces comptables ne pourront être caviardées ;

DIRE que les pièces comptables devront être certifiées par un expert-comptable indépendant permettant de justifier de l'exhaustivité des ventes déclarées et des articles en stock ;

ORDONNER à Madame Kélia TOLEDANO – BERDAH de déclarer son domicile réel, et de produire tout justificatif de domicile associé ;

ORDONNER à la société RAINBOW K JEWELRY de déclarer et son siège effectif et réel, de produire tout justificatif associé et de l'enjoindre à le mentionner au sein des mentions légales du site internet www.rainbowkjewelry.com

ASSORTIR l'ensemble de ces mesures d'une astreinte de 1.000 euros par jour de retard suivant un délai de 8 jours à compter de la signification de l'ordonnance à intervenir.

CONDAMNER in solidum la société RAINBOW K JEWELRY, Madame Kelly BENHAMOU – SOUEID, et Madame Kélia TOLEDANO – BERDAH à verser à Madame Susan OSTER une indemnité de 3.000 euros au titre de l'article 700 du Code de Procédure Civile

CONDAMNER in solidum la société RAINBOW K JEWELRY, Madame Kelly BENHAMOU – SOUEID, et Madame Kélia TOLEDANO – BERDAH aux dépens

**LISTE DES PIÈCES COMMUNIQUÉES**

1. **Présentation de Madame Susan OSTER**

    1.1 Extraits du site internet www.feraljewelry.com (et traduction simple)
    1.2 Revue de presse (et traduction simple)
    1.3 Extraits de l'ouvrage *100 Women in jewelry* (et traduction simple)
    1.4 Notice extraite des registres de l'USPTO de la marque Feral n° 5185519 déposée par Madame Susan Oster le 26 juin 2016 (et traduction simple)

2. **Sur la collection 'Spike'**

    2.1 Notice de copyright n° VA 2-202-552 – Bling Spike Ring (et traduction simple)
    2.2 Notice de copyright n° VA0002352994 – Feral Jewelry Large Spike Pendant (et traduction simple)

15

2.3 Extraits du site internet www.feraljewelry.com

3. **Présentation de la société RAINBOW K JEWELRY**

   3.1 Extrait Kbis de la société RAINBOW K JEWELRY
   3.2 Actes déposés au RCS et statuts RAINBOW K JEWELRY (source Pappers.com)
   3.3 Extrait du site internet de la société RAINBOW K JEWELRY
   3.4 Revue de presse

4. **Sur les exploitations litigieuses – Collection Horn**

   4.1 Procès-verbal de constat d'huissier du 2 octobre 2024
   4.2 Extraits du site internet Rainbow K – Collection Horn
   4.3 Commande et facture d'acquisition d'une bague Horn en date du 10 septembre 2024
   4.4 Rapport d'expertise de Monsieur David Schwartz, professionnel de la haute joaillerie – (version originale et traduction jurée)

5. **Mises en demeures**

   5.1 Courrier de mise en demeure en date du 19 mai 2023 (et traduction jurée)
   5.2 Courriel de relance en date du 21 juin 2023
   5.3 Courrier de mise en demeure du 3 octobre 2024
   5.4 Courriel de relance du 21 octobre 2024

6. **Opérations de saisie-contrefaçon**

   6.1 Ordonnances du 27 mars 2025 du Président du Tribunal Judiciaire de Paris, et PV de signification
   6.2 PV de constat du 10 avril 2025 (opérations effectuées au showroom de la société RAINBOW K JEWELRY)
   6.3 Procès-verbal de carence du 3 juin 2025
   6.4 Sommation de communiquer du 15 juillet 2025
   6.5 Courrier officiel de Me Becker du 17 juillet 2025
   6.6 Publications effectuées sur les réseaux sociaux par les défenderesses

16

July 23, 2025:

Pre-trial Writ filed by Oster, requesting:

ORDER RAINBOW K JEWELRY:
To disclose accounting information relating to the following items:
- Horn Pavé Ring / Ring Horn full Diamonds
- Horn Hoop Diamond Ring
- Horn Gold Ring / Ring Horn gold
- Horn Hoop Black Diamond Ring
- Horn Diamond Lines Bracelet / Horn Hoop Diamonds Bangle
- Horn Pavé Bracelet / Horn Pave Bangle

And in particular:

COMMUNICATE all documents, invoices, and accounting records relating to the number of disputed products sold, as well as the number remaining in stock, and the various stores/retailers or wholesalers to whom the disputed products were sold and are still available;

STATE that customer invoices, accounting statements, and inventory reports must be accompanied by purchase orders, invoices, and delivery notes from manufacturers and service providers, customs clearance documents, delivery notes, and documents exchanged with the declared freight forwarder, namely VDH, or any other freight forwarder;

COMMUNICATE a printed copy or electronic version of the computerized accounting records wherever they may be located, showing the amount of revenue generated by sales of the six disputed items;

PROVIDE all prospectuses, visuals and advertising campaigns, brochures, catalogs, notices, and price lists from which the origin, destination, and extent of the alleged acts of counterfeiting could be determined, and obtain the number of copies of each of the aforementioned advertising materials;

DECLARE that the accounting documents may not be redacted;

DECLARE that the accounting documents must be certified by an independent accountant in order to prove the completeness of the declared sales and items in stock;

ORDER Ms. Kélia TOLEDANO-BERDAH to declare her actual place of residence and to produce any supporting documents relating thereto;

ORDER RAINBOW K JEWELRY to declare its actual and effective registered office, to produce all associated supporting documents, and to include this information in the legal notices on the website www.rainbowkjewelry.com

ACCOMPANY all of these measures with a penalty payment of €1,000 per day of delay following a period of eight days from the date of service of the order to be issued.

ORDER RAINBOW K JEWELRY, Ms. Kelly BENHAMOU-SOUEID, and Ms. Kélia TOLEDANO-BERDAH jointly and severally to pay Ms. Susan OSTER compensation of €3,000 pursuant to Article 700 of the Code of Civil Procedure.

ORDER RAINBOW K JEWELRY, Ms. Kelly BENHAMOU-SOUEID, and Ms. Kélia TOLEDANO-BERDAH jointly and severally to pay the costs