# Exhibit E

**TRIBUNAL
JUDICIAIRE
DE PARIS**



3ème chambre
2ème section

N° RG 25/05477
N° Portalis
352J-W-B7J-C7WDE

N° MINUTE :

Assignation du :
23 avril 2025

**ORDONNANCE DU JUGE DE LA MISE EN ETAT
rendue le 14 novembre 2025**

**DEMANDERESSE**

**Madame SUSAN OSTER**
1880 Century Park East, Suite 900
Los Angeles, CA, 90067 (Etats-Unis d'Amérique)

*représentée par **Maître Sophie VIARIS DE LESEGNO** de la SELEURL SVL AVOCAT, avocats au barreau de PARIS, vestiaire #G605*

**DEFENDERESSES**

**Madame Kélia TOLEDANO - BERDAH**
95 rue de Courcelles
75017 PARIS

**S.A.S. RAINBOW K JEWELRY**
5 rue de Castiglione
75001 FRANCE

**Madame Kelly BENHAMOU - SOUEID**
28 rue Sedaine
75011 PARIS

*représentée par **Maître Pascal BECKER** de la SELARL ipSO, avocats au barreau de PARIS, vestiaire #L0052*

Copies délivrées le :
Me VIARIS DE LESEGNO - G605
Me BECKER - L052

Page 1

### MAGISTRAT DE LA MISE EN ETAT

Monsieur Arthur COURILLON-HAVY, Juge
assisté de Madame Alice LEFAUCONNIER, Greffière

### DEBATS

Avis a été donné aux avocats que l'ordonnance serait rendue le 14 novembre 2025.

### ORDONNANCE

Rendue publiquement par mise à disposition au greffe
Contradictoire
En premier ressort

---

### EXPOSÉ DU LITIGE

1. Mme Oster reproche à la société 'Rainbow k jewelry' (la société Rainbow), Mme Benhamou-Soueid et Mme Toledano-Berdah (ensemble, les défenderesses) la commercialisation de bijoux qu'elle estime imiter les siens, ce qu'elle qualifie de contrefaçon de droit d'auteur.

2. Elle a demandé la communication de documents comptables au titre du droit d'information par conclusions d'incident du 23 juillet 2025.

3. Après l'audience du 9 octobre 2025, le juge de la mise en état a rouvert les débats par ordonnance du 7 novembre afin d'ordonner une enquête qui aurait lieu le 18 décembre à 10h.

4. Le juge a indiqué son souhait d'entendre l'auteur des deux attestations comptables communiquées par la société Rainbow et critiquées par Mme Oster et invité les parties à indiquer pour le 13 novembre si elles souhaitaient l'audition d'autres témoins ou la présence d'un technicien. Aucun message n'a été reçu.

### MOTIVATION

5. L'article 143 du code de procédure civile pose le principe selon lequel les faits dont dépend la solution du litige peuvent, à la demande des parties ou d'office, être l'objet de toute mesure d'instruction légalement admissible.

6. Les articles 146 et 147 précisent qu'une mesure d'instruction ne peut être ordonnée sur un fait que si la partie qui l'allègue ne dispose pas d'éléments suffisants pour le prouver, qu'en aucun cas une mesure d'instruction ne peut être ordonnée en vue de suppléer la carence de la partie dans l'administration de la preuve et que le juge doit limiter le choix de la mesure à ce qui est suffisant pour la solution du litige, en s'attachant à retenir ce qui est le plus simple et le moins onéreux.

7. Conformément à l'article 199, lorsque la preuve testimoniale est admissible, le juge peut recevoir des tiers les déclarations de nature à l'éclairer sur les faits litigieux dont ils ont personnellement connaissance. Ces déclarations sont faites par attestations ou recueillies par voie d'enquête selon qu'elles sont écrites ou orales.

8. Au cas présent, Mme Oster entend prouver le préjudice qu'elle allègue du fait d'une contrefaçon, dont la preuve est libre, et a droit à la communication

d'informations de la part de la société Rainbow pour établir ce préjudice, en vertu de l'article L. 331-1-2 du code de la propriété intellectuelle. La société Rainbow a communiqué deux attestations de son expert-comptable relatives au nombre de produits litigieux vendus (les bijoux de la collection « horn »), au chiffre d'affaires et à la marge afférents. La première attestation se limitait aux produits vendus en France, la seconde devait concerner la totalité des ventes et révéler le territoire de destination.

9. Mme Oster a toutefois critiqué la crédibilité de cette attestation et estimé la communication insuffisante, réclamant la communication de l'ensemble des pièces comptables relatives aux produits litigieux.

10. Comme le juge de la mise en état l'a relevé dans l'ordonnance du 7 novembre 2025, une telle communication complète poserait toutefois d'une part une difficulté de traitement et d'analyse, donc de cout et de durée du procès, d'autre part une difficulté quant à la preuve de l'exhaustivité des données communiquées, qui ne pourrait jamais être certaine.

11. Il en résulte que la mesure d'instruction opportune, la plus simple et la moins onéreuse au cas présent, est l'audition par voie d'enquête de l'expert-comptable ayant attesté des ventes litigieuses, afin d'apporter la preuve de l'exhaustivité et de la véracité des informations communiquées.

12. L'enquête vise ainsi à prouver le nombre de produits de la gamme « horn » vendus par la société Rainbow, à destination de quels territoires, en réalisant quel chiffre d'affaires et quel bénéfice (en explicitant ce que cette marge recouvre ou exclut).

13. À cette fin, le témoin pourra notamment être interrogé, de manière générale, sur les informations auxquelles il a eu accès, les vérifications qu'il a entreprises, le cas échéant, et plus généralement ce à quoi peut s'attendre le lecteur de l'attestation quant à la certitude du contenu de l'attestation.

14. Il sera également utile de comprendre, en particulier, les points soulignés par Mme Oster, à savoir :
    - pourquoi le nombre de produits vendus est différent entre la première attestation et la nouvelle (16 contre 44)
    - pourquoi la marge n'a pas évolué de manière proportionnelle (passant de 88 072 euros à 102 752 euros)
    - quelles erreurs peuvent exister dans l'analyse des factures et que faut-il finalement retenir en réalité (sont en particulier critiqué la facture 20230055 qui indiquerait 2, et non 12, bagues vendues, le taux de TVA sur des factures vers l'étranger ou l'absence de TVA sur la facture 202300209 vers la France, les factures 20240286 et 20240413 qui indiquent un prix en dollars et non en euros)
    - comment a été déterminé ou vérifié le prix d'achat des produits litigieux
    - comment fonctionnent les « commissions d'agent », comment ont-elles été établies pour les besoins de l'attestation, pourquoi le montant de ces commissions n'est pas recoupable (selon Mme Oster) par le calcul à partir des données de l'attestation
    - à quel type d'information correspondent les mentions caviardées en bas de certaines factures et pourquoi ont-elles été caviardées
    - serait-il possible d'étayer, confirmer ou corriger les données présentées dans l'attestation par une extraction du grand livre du compte client, de celui du compte fournisseur, des factures de commissionnaires, les factures d'achat des produits par la société Rainbow ?

15. Afin de permettre au témoin de se remémorer utilement les faits, il est opportun que la présente décision soit jointe à la lettre le convoquant.

Page 3

**PAR CES MOTIFS**

*Le juge de la mise en état* :

**ORDONNE** une enquête afin de prouver les quantités, le chiffre d'affaires et le bénéfice réalisé du fait de la vente de bijoux de la collection « horn » par la société Rainbow ainsi que les territoires auxquels ces ventes étaient destinées ;

Laquelle aura lieu devant le juge de la mise en état saisi de l'affaire (3ᵉ chambre, 2ᵉ section),

Le 18 décembre 2025 à 10h, au tribunal judiciaire de Paris, salle 4.34 ;

Sera entendu M. Phi Dominic Tran, expert-comptable,
demeurant chez Fidurys, 18 boulevard Montmartre, 75009 Paris

Faite et rendue à Paris le 14 novembre 2025

| La greffière | Le juge de la mise en état |
|---|---|
| Alice LEFAUCONNIER | Arthur COURILLON-HAVY |

November 14, 2025:

Pre-trial Judge Order requesting:

- an investigation to determine the quantities, turnover, and profits generated by the sale of jewelry from the "horn" collection by Rainbow, as well as the territories for which these sales were intended;
- which will take place before the judge hearing the case (3rd Chamber, 2nd Section), on December 18, 2025, at 10 a.m., at the Paris Court of Justice, Room 4.34;
- Mr. Phi Dominic Tran, chartered accountant, residing at Fidurys, 18 Boulevard Montmartre, 75009 Paris, will be heard.